# IN THE SUPREME COURT OF TEXAS

═══════════

No. 17-0140

═══════════

SKY VIEW AT LAS PALMAS, LLC AND ILAN ISRAELY, PETITIONERS,

v.

ROMAN GERONIMO MARTINEZ MENDEZ AND SAN JACINTO TITLE SERVICES
OF RIO GRANDE VALLEY, LLC, RESPONDENTS

═══════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRTEENTH DISTRICT OF TEXAS

═══════════════════════════════

**Argued March 20, 2018**

JUSTICE GREEN delivered the opinion of the Court.

In this case, we consider whether the trial court erred in failing to apply the one-satisfaction rule and award a nonsettling defendant settlement credits. We hold that the one-satisfaction rule applies to this case, and the trial court therefore erred in denying the nonsettling defendant the settlement credits. We reverse the judgment of the court of appeals and remand the case to that court for proceedings consistent with this opinion.

## I. Background

In 2007, Ilan Israely and Abraham Gottlieb formed Sky View at Las Palmas, L.L.C. for the purpose of purchasing and developing land in Hidalgo County. In March 2008, Sky View acquired a tract of land containing 38.416 acres in Hidalgo County (the Property), from M Construction, Ltd.,

the president of which was Hugo Martinez (Hugo). Sky View purchased the Property for $6.5 million, and it financed $4 million of the purchase price through a Promissory Note and Deed of Trust with Compass Bank[1] (the purchase loan). Sky View and M Construction also entered into a construction agreement in which M Construction would serve as the project's general contractor.

After obtaining the purchase loan, Sky View, through Israely and Gottlieb, sought a construction loan with Compass Bank for $9 million, but the bank said it would take months to complete the due diligence for this loan. To keep the project moving while it waited for this loan, Sky View sought a second construction loan for approximately $1.5 million. Israely, through a connection made by Hugo, approached Romano Geronimo Martinez Mendez (Martinez) about providing the financing for this second construction loan. There is evidence that Martinez was provided with Israely's personal financial statements indicating Israely's net worth to be approximately $35 million.

To help facilitate this loan agreement with Sky View and Israely, Martinez retained the law firm of Kittleman, Thomas & Gonzales, LLP (Kittleman) to draft the loan documents. Martinez also retained San Jacinto Title Services of Rio Grande Valley, LLC (San Jacinto) to close the transaction and serve as the title company. San Jacinto was an agent authorized to issue title insurance policies for Fidelity National Title Insurance Company (Fidelity). Martinez agreed to make this second construction loan to Sky View (the Martinez loan), which consisted of Martinez's loan of $1.275 million to Sky View and Sky View's promise to repay the loan within six months at 18%

---

[1] At the time, Compass Bank was known as "Texas State Bank," and it is referred to interchangeably throughout the record. We refer to it as "Compass Bank."

interest (the Note), secured by a lien on the Property. This was the second lien on the Property behind Compass Bank's lien. Israely and Gottlieb also agreed to each provide a personal guaranty of the Martinez loan.

Part of this lawsuit arises out of the closing transaction of the Martinez loan. Kittleman drafted the loan documents but allowed Carmen Solis, an escrow officer with San Jacinto, to oversee the loan closing entirely. To finalize the loan, Solis sent the loan documents to Gottlieb by overnight mail, including both Gottlieb's and Israely's personal guaranty agreements. These documents were sent back to Solis fully executed, and Solis notarized them, falsely stating that they were signed in her presence.

In October 2008, Sky View defaulted on the Note and the parties began informal negotiations regarding its repayment. Over a year later, the dispute had not been resolved, and Martinez retained the law firm of Walker & Twenhafel, L.L.P (Walker) to assist in recovering on the Note. In May 2010, Martinez filed suit against Sky View, Israely, and Gottlieb (the Sky View defendants), seeking damages for "the outstanding balance of the Note and Guaranty Agreements" and attorney's fees. Martinez claims Walker never advised him during this time that the first lienholder—Compass Bank—could foreclose on the Property, which would adversely affect his lien interest and a claim under his title insurance policy with Fidelity. In October 2011, after Sky View had stopped making payments to Compass Bank on the purchase loan, Compass Bank foreclosed on the Property, which Martinez claims "effectively wip[ed] out" his secondary interest. Three months after the foreclosure, Fidelity denied Martinez's claim under his title insurance policy.

Over a nearly four-year period of litigation, Martinez added Kittleman, San Jacinto, and Fidelity as defendants in his suit against the Sky View defendants, alleging various causes of action based on the closing transaction on the Martinez loan.[2] Martinez also later added Walker as a defendant, alleging several causes of action based on its representation during the litigation with Sky View.[3] Martinez eventually settled with each of these four added defendants.[4]

In April 2014, Martinez proceeded to trial against the Sky View defendants based on the following causes of action: breach of the Martinez loan Note and guaranty agreements, fraud, promissory estoppel, quantum meruit, ratification/adoption, and conspiracy. The only questions submitted to the jury related to the breach-of-contract and fraud claims, and Martinez submitted only one damages question:

> What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Martinez for his damages, if any, that resulted from either (1) Sky View's failure to comply with the Note; (2) Gottlieb's failure to comply with the guaranty agreement; (3) Israely's failure to comply with the guaranty agreement; *or* (4) Israely's fraud?

The jury found that: (1) Israely and Gottlieb authorized Sky View's execution of the Martinez loan Note; (2) Israely and Gottlieb both ratified Sky View's execution of the Note; (3) Sky View failed to comply with the terms of the Note; (4) Gottlieb failed to comply with his guaranty agreement;

---

[2] Martinez brought causes of action against Kittleman for legal malpractice, breach of fiduciary duty, negligence, vicarious liability, Texas Deceptive Trade Practices Act (DTPA) violations, and breach of contract; against San Jacinto for negligence, fraud, and conspiracy; and against Fidelity for breach of contract, unfair settlement practices, and negligence.

[3] Martinez brought causes of action against Walker for negligence, professional malpractice, and breach of fiduciary duty.

[4] Before trial, Martinez settled with Kittleman for $175,000, with San Jacinto for $1.275 million, and with Fidelity for $300,000. After trial but before judgment was entered, Martinez settled with Walker for $550,000.

(5) Israely authorized another to execute the guaranty agreement on his behalf and ratified the guaranty agreement; (6) Israely failed to comply with the guaranty agreement; (7) Israely committed fraud on Martinez; and (8) Martinez incurred damages of $2,665,832.72—the same amount Martinez claimed was due on the Note. The jury also awarded Martinez attorney's fees related to trial, appeals, and any post-judgment efforts to collect the judgment. Martinez elected to recover on the breach-of-contract claim.

In response to Martinez's motion for judgment, Sky View and Israely together asserted that under the one-satisfaction rule, they were entitled to offset the final judgment by the amounts the four settling defendants paid to Martinez, plus applicable interest.[5] However, the trial court rendered judgment against the Sky View defendants, jointly and severally, for the full jury award— $2,665,832.72—in damages and prejudgment interest, plus trial attorney's fees of $574,062 and contingent appellate attorney's fees of $200,000. Sky View and Israely again argued in post-judgment motions that they were entitled to settlement credits, and they requested that Martinez produce those settlement documents.[6] Sky View and Israely eventually introduced an affidavit from their counsel as to the amount and timing of each of Martinez's settlements, and Martinez's counsel admitted those same amounts to the trial court in a hearing on the motions. Martinez did not file any responses or offer evidence that the Sky View defendants were not entitled to settlement credits. The trial court never ruled on any of Sky View and Israely's post-judgment motions, so their request

---

[5] Gottlieb did not appear for trial, testify, or file an appeal.

[6] Sky View and Israely together filed a motion for judgment notwithstanding the verdict, a motion for modification of the judgment, and a motion for a new trial.

5

for settlement credits was denied by operation of law. *See* TEX. R. CIV. P. 329b(e), (g). Sky View

and Israely appealed.

The court of appeals affirmed the trial court's denial of settlement credits. ___ S.W.3d ___,

___ (Tex. App.—Corpus Christi–Edinburg 2017, pet. granted). After purportedly examining

"Martinez's causes of action, allegations, and the injuries he claimed" against each of the settling

defendants, the court of appeals held that Martinez's claims against Sky View and Israely were

"independent of the other injuries Martinez alleged against the settling defendants." *Id.* at ___. It

stated:

> Although Martinez's claims against each of the seven defendants in this case arise
> out of a common set of underlying facts and sequence of events, . . . the damages for
> which the jury found Sky View and Israely liable are not part of a "single, indivisible
> injury," as [Sky View and Israely] contend.

*Id.* at ___. The court of appeals also held that there was factually sufficient evidence to support the

amount of Martinez's attorney's fees. *Id.* at ___. Sky View and Israely appealed, and we granted

their petition for review. 61 Tex. Sup. Ct. J. 332 (Feb. 16, 2018). For ease of reference, we refer

to Sky View and Israely together as "Sky View."

## II. Analysis

### A. The One-Satisfaction Rule

This case concerns the availability of settlement credits under the one-satisfaction rule.

"Under the one satisfaction rule, a plaintiff is entitled to only one recovery for any damages

suffered." *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 390 (Tex. 2000); *see also Stewart Title*

*Guar. Co. v. Sterling*, 822 S.W.2d 1, 7 (Tex. 1991) ("The one satisfaction rule applies to prevent a

6

plaintiff from obtaining more than one recovery for the same injury."). This Court first articulated the one-satisfaction principle in *Bradshaw v. Baylor University*:

> It is a rule of general acceptation that an injured party is entitled to but one satisfaction for the injuries sustained by him. That rule is in no sense modified by the circumstance that more than one wrongdoer contributed to bring about his injuries. There being but one injury, there can, in justice, be but one satisfaction for that injury.

84 S.W.2d 703, 705 (Tex. 1935), *overruled in part by Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 432 (Tex. 1984).[7] In *Stewart Title*, we clarified that the fundamental consideration in applying the one-satisfaction rule is whether the plaintiff has suffered a single, indivisible injury—not the causes of action the plaintiff asserts: "There can be but one recovery for one injury, and the fact that more than one defendant may have caused the injury or that there may be more than one theory of liability, does not modify this rule." 822 S.W.2d at 8. Thus, the rule applies both "when the defendants commit the same act as well as when defendants commit technically differing acts which result in a single injury." *Id.* at 7. In *First Title Co. of Waco v. Garrett*, we explained the rule's rationale as it applies to settlement credits for nonsettling defendants:

---

[7] As we noted in *Stewart Title*, "*Duncan* did not abolish the one satisfaction rule but merely modified the method in which the rule would apply to specific cases." 822 S.W.2d at 5–6. "The *Duncan* comparative causation scheme applied only to products cases involving strict liability, breach of warranty, and mixed theories of strict liability and negligence . . . ." *Id.* Both the *Duncan* comparative-causation scheme and the former comparative-negligence statute, *see* former TEX. CIV. PRAC. & REM. CODE §§ 33.001–.003 (1986), were displaced by the former comparative-responsibility statute in September 1987, Act of June 3, 1987, 70th Leg., 1st C.S., ch. 2, §§ 2.03–.06, 1987 Tex. Gen. Laws 37, 40 (amended 1995) (current version at TEX. CIV. PRAC. & REM. CODE §§ 33.001–.004); *see also Stewart Title*, 822 S.W.2d at 5 (discussing Texas's contribution schemes at that time).

7

> [T]he plaintiff should not receive a windfall by recovering an amount in court that covers the plaintiff's entire damages, but to which a settling defendant has already partially contributed. The plaintiff would otherwise be recovering an amount greater than the trier of fact has determined would fully compensate for the injury.

860 S.W.2d 74, 78 (Tex. 1993).

A nonsettling defendant seeking a settlement credit under the one-satisfaction rule has the burden to prove its right to such a credit. *Utts v. Short*, 81 S.W.3d 822, 828 (Tex. 2002); *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 927 (Tex. 1998). In *Ellender*, we held that a nonsettling defendant meets this burden by introducing into the record either the settlement agreement or some other evidence of the settlement amount. 968 S.W.2d at 927; *see also Utts*, 81 S.W.3d at 828. "Once the nonsettling defendant demonstrates a right to a settlement credit, the burden shifts to the plaintiff to show that certain amounts should not be credited because of the settlement agreement's allocation." *Utts*, 81 S.W.3d at 828. The plaintiff can rebut the presumption that the nonsettling defendant is entitled to settlement credits by presenting evidence showing that the settlement proceeds are allocated among defendants, injuries, or damages such that entering judgment on the jury's award would not provide for the plaintiff's double recovery. *See id.* at 828–29 (requiring the nonsettling plaintiff to show that it did not benefit from the settlement); *Casteel*, 22 S.W.3d at 391–92 (requiring a showing of an allocation between joint and separate damages); *Ellender*, 968 S.W.2d at 928 (requiring a showing of an allocation between actual and punitive damages); *First Title*, 860 S.W.2d at 79 (applying the one-satisfaction rule when the plaintiff did not show it settled for a separate injury). A written settlement agreement that specifically allocates damages to each

8

cause of action will satisfy this burden. *Ellender*, 968 S.W.2d at 928; *see also First Title*, 860 S.W.2d at 79 (examining contents of settlement agreement).

For example, in *First Title Co. of Waco v. Garrett*, we examined the contents of a settlement agreement and held that the nonsettling defendants were entitled to a settlement credit because it covered the same injury for which the jury found the nonsettling defendants liable. *See* 860 S.W.2d at 78–79. The plaintiffs, the Garretts, purchased land for use as an automobile salvage yard but later learned the land was covered by a restrictive covenant prohibiting such use. *Id*. at 75. The Garretts sued the sellers for misrepresentations, and in a separate suit, sued two title companies for negligence and DTPA violations. *Id*. at 76. The Garretts settled with the sellers, and though the title companies placed the settling defendants' settlement agreement into the record, the trial court denied the title companies' request for settlement credits. *Id.* The court of appeals affirmed, holding that the title companies had not proved that they and the sellers were joint tortfeasors. *Id.* This Court reversed. *Id.* at 79. We observed that "[t]he settlement agreement shows that all parties denied any liability, but there are other statements addressing the merits of that lawsuit and what the settlement was intended to remedy." *Id.* We then noted that the settlement agreement established that the Garretts' claims were based on the sellers' alleged misrepresentations and that they sought to recover "money, rescission of the sale of land . . . and attorney's fees." *Id.* We held that the title companies were entitled to a credit against the judgment equal to the full amount of this settlement because "[b]y its terms, the settlement agreement covers the same injury for which the title companies were found liable in the present lawsuit." *Id.* Further, "[a]lthough not adjudicated to be

9

joint tortfeasors, the title companies and the sellers cannot reasonably be said to have caused separate injuries." *Id.*

"[A] nonsettling party should not be penalized for events over which it has no control." *Utts*, 81 S.W.3d at 829 (citing *Ellender*, 968 S.W.2d at 927). Thus, this burden-shifting framework, based on the presumption that the nonsettling defendant is entitled to a settlement credit after it introduces evidence of the plaintiff's settlement, is appropriate because the plaintiff is "in the best position" to demonstrate why rendering judgment based on the jury's damages award would not amount to the plaintiff's double recovery. *See id.* If the plaintiff fails to satisfy this burden, then the defendant is entitled to a credit equal to the entire settlement amount. *See id.*; *Ellender*, 968 S.W.2d at 928. We review the trial court's application of the one-satisfaction rule de novo.[8] *See First Title*, 860 S.W.2d at 78–79; *Stewart Title*, 822 S.W.2d at 7–8.

## B. Sky View's Settlement Credits

Sky View argues that the courts below erred in failing to apply the one-satisfaction rule and denying it settlement credits for the settlements Martinez entered into with Kittleman, San Jacinto, Fidelity, and Walker. Sky View asserts that Martinez consistently pled, proved, and asked the jury to compensate him for a single, indivisible injury from all seven defendants—nonpayment of the

---

[8] The court of appeals here reviewed the trial court's settlement-credit determination for an abuse of discretion, ___ S.W.3d at ___, and neither party has argued this was error. This Court has not explicitly articulated a standard of review for applying the one-satisfaction rule, and courts of appeals have varied. *Compare Galle, Inc. v. Pool*, 262 S.W.3d 564, 570 n.3 (Tex. App.—Austin 2008, pet. denied) (de novo) *with Oyster Creek Fin. Corp. v. Richwood Invs. II, Inc.*, 176 S.W.3d 307, 326 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) (abuse of discretion). However, our decisions demonstrate that whether the plaintiff has complained of a single, indivisible injury, and whether the defendant is entitled to credit one or more settlements against the judgment, are legal determinations that we review de novo. *See First Title*, 860 S.W.2d at 78–79 (considering what injury a settlement agreement covered); *Stewart Title*, 822 S.W.2d at 7–8 (determining that the plaintiff complained of a single, indivisible injury).

10

$1.275 million Note. Thus, Sky View argues, it was entitled to settlement credits to offset the jury's damages award against it and prevent Martinez's double recovery. The court of appeals erred, Sky View contends, when it examined the causes of action Martinez asserted against each defendant rather than the injury he allegedly sustained. Sky View asks this Court to reduce the judgment "by the $2.3 million settlement funds Martinez received and any applicable interest."

Martinez asserted several claims against Kittleman arising out of Kittleman's actions during the Martinez loan closing—actions Martinez alleged resulted in his inability to recover the amount due on the Note when Sky View later defaulted.[9] Martinez also asserted causes of action against San Jacinto based on Solis's handling of the closing, and he alleged that this negligence resulted in Israely's later assertion that he did not sign the loan documents and therefore was not liable for the Note's repayment. Martinez sought damages from both Kittleman and San Jacinto equal to the amount of lost principal and interest due on the Note and the attorney's fees he incurred in seeking its repayment.[10] Thus, as a result of both Kittleman's and San Jacinto's alleged actions, Martinez alleged to have suffered the same injury—nonpayment of the Note.

Similarly, the claims Martinez asserted against Fidelity arose from its role in the Martinez loan transaction and Sky View's default. Martinez alleged that Fidelity acted negligently in

---

[9] For example, in his malpractice claim, Martinez alleged that "if the loan transaction would have been properly closed by Kittleman . . . the contractual liability of Sky View, Israely, and Gottlieb to Martinez would have been clear. . . . Instead, and as a direct result of the botched closing and failures to disclose, Martinez lacks the documents required to protect his rights and enforce the loan documents."

[10] Martinez alleged that as a result of Kittleman's malpractice, he "has had to vigorously litigate this case for several years in order to try to establish liability against one or more of the Defendants in this case," and asked to recover "additional damages consisting of the additional attorneys fees and expenses he has incurred as a result of the legal malpractice of Kittleman." Similarly, he sought "the additional" attorney's fees and expenses he incurred as a result of San Jacinto's allegedly fraudulent actions.

11

allowing San Jacinto—an agent authorized to issue insurance policies on its behalf—to operate as it did, and that Fidelity breached the title insurance policy by denying Martinez's claim and engaging in unfair settlement practices. As to damages from Fidelity's conduct, Martinez asserted that "Fidelity should be responsible for covering Martinez's loss under the title insurance policy." Finally, Martinez asserted claims against Walker based on Walker's initial representation of Martinez in its suit against Sky View seeking repayment of the Note—specifically, that Walker failed to take any steps to protect Martinez's lien interest in the Property before Compass Bank's foreclosure, and that this delay resulted in Fidelity's denial of Martinez's claim under the title insurance policy. Martinez sought to recover "actual and special damages from Walker, including the benefit of his mortgagee title insurance policy which was lost . . . [and] exemplary damages from Walker due to its gross negligence and breach of fiduciary duty."

Further, the only damages evidence Martinez provided at trial was based on his financial loss after Sky View defaulted on the Note. Martinez's damages evidence included the loan documents, Martinez's testimony about what was due on the Note—by his calculation, $2,665,832.72, which included prejudgment interest up to the date of trial—and expert testimony as to Martinez's reasonable and necessary attorney's fees. Martinez's only damages question lumped together all of his damages arising from the Note, the guaranties, and the alleged fraud. Accordingly, the jury assessed Martinez's damages under this question with one amount—$2,665,832.72, the amount Martinez claimed was due on the Note. This is the same recovery Martinez sought against each settling defendant.

12

The court of appeals erred in examining only the causes of action Martinez asserted against each of the settling defendants when our precedent makes clear that the causes of action pled are not the proper inquiry in applying the one-satisfaction rule. *See Stewart Title*, 822 S.W.2d at 7–8. The proper question is whether the plaintiff has suffered a single, indivisible injury. *See id.* Here, although he asserted various causes of action against the seven defendants, all of Martinez's allegations were based on the same injury—nonpayment of the Note. In addition, other than the exemplary damages he sought against Walker, which we address below, all of the damages Martinez sought against each of these defendants was for an amount equivalent to his economic loss of the loan's principal and accumulated interest plus the attorney's fees he incurred in pursuing the litigation. Thus, although not adjudicated to be tortfeasors, Sky View and the settling defendants cannot reasonably be said to have caused separate injuries. *See First Title*, 860 S.W.2d at 79.

In response to Martinez's motion for judgment, Sky View alleged that Martinez benefitted from settlement agreements with Kittleman, San Jacinto, Fidelity, and Walker based on the same injury for which the jury awarded him damages, and thus, allowing Martinez to recover the full amount of the jury's award would result in his double recovery. This is a proper time and method to raise the one-satisfaction rule. *See Utts*, 81 S.W.3d at 830 (holding that a nonsettling defendant properly raised the settlement-credit issue in response to the plaintiff's motion for judgment). Additionally, after the trial court rendered judgment for Martinez, Sky View filed several motions, again asserting the one-satisfaction rule. Sky View presented affidavit evidence as to the amount of each settlement, and Martinez's counsel stipulated to those amounts. Thus, Sky View

13

successfully raised a presumption that it was entitled to settlement credits equal to those amounts. *See id.* at 829; *Ellender*, 968 S.W.2d at 927.

At this point, the burden shifted to Martinez to rebut this presumption by showing that the settlement proceeds were allocated to an injury or damages different from the one for which he recovered against Sky View, *see Utts*, 81 S.W.3d at 829, so that receiving the full jury award would not amount to a double recovery or windfall. *See First Title*, 860 S.W.2d at 78. Martinez asserted various arguments in response to Sky View's request for application of the one-satisfaction rule, but he never offered any evidence regarding any allocation of the settlement proceeds, as our precedent requires.[11] *See Utts*, 81 S.W.3d at 829 (requiring a plaintiff to provide evidence to rebut the presumption of settlement credits); *Casteel*, 22 S.W.3d at 391–92; *Ellender*, 968 S.W.2d at 928; *First Title*, 860 S.W.2d at 78–79.

Martinez's settlement agreements with Kittleman and San Jacinto are both in the record. Both agreements show that all parties denied any liability, but both agreements also establish that Martinez sought recovery against these defendants for the same injury for which he recovered against Sky View—his loss of the loan's principal and accumulated interest after Sky View defaulted on the Note.[12] Both agreements provide that the parties will bear their own attorney's fees

---

[11] Martinez's response to Sky View's request for application of the one-satisfaction rule consisted of arguments that the rule is limited to cases involving joint tortfeasors, there was no single injury because Martinez requested different types of damages from different defendants, and Sky View waived this issue because it never pled or proved it was entitled to such credits. We address each of these arguments in this opinion.

[12] The Kittleman settlement agreement establishes that Martinez made claims based on Kittleman's alleged malpractice "in closing the [Martinez] loan" and Israely's subsequent denial of liability on the Note. The San Jacinto agreement establishes that Martinez made claims based on its "provision of title insurance, escrow services, notary services and courtesy closing services" in the Martinez loan transaction, seeking various damages and attorney's fees. That settlement agreement states that Martinez "has been pursuing claims for . . . exemplary damages," but Martinez's live pleading at the time of the parties' settlement sought only his "economic out of pocket damages (the principal

14

and costs, thereby excluding the attorney's fees Martinez incurred in those actions from the settlement proceeds, and preventing Martinez's double recovery of attorney's fees under the trial court's judgment. The record does not contain the Fidelity and Walker settlement agreements, only the affidavit evidence Sky View offered stating the amounts of those settlements. Because Martinez did not offer any evidence allocating those settlement amounts, and the record does not reflect any such allocation, Martinez failed to rebut the presumption that Sky View is entitled to settlement credits equal to those amounts. *See Utts*, 81 S.W.3d at 828–29; *Ellender*, 968 S.W.2d at 927–28. Though Martinez sought exemplary damages against Walker, *Ellender* made clear that the burden is on the plaintiff to "tender a valid settlement agreement allocating between actual and punitive damages to the trial court" in order to avoid a settlement credit. 968 S.W.2d at 928.

In sum, Martinez complained of a single injury against each defendant—nonpayment of the $1.275 million Note—varying his causes of action and allegations according to each defendant's alleged role in causing Martinez to suffer the claimed damages. *See Casteel*, 22 S.W.3d at 390 (recognizing that the one-satisfaction rule applies "when defendants commit technically different acts that result in a single injury"). Thus, when Sky View offered evidence of the settlement amounts, it successfully raised a presumption that it was entitled to offset the judgment by those amounts. *See Utts*, 81 S.W.3d at 828; *Ellender*, 968 S.W.2d at 927. When Martinez failed to rebut this presumption, the trial court should have applied the settlement credits in order to prevent Martinez's double recovery on his single, indivisible injury of nonpayment of the Note.

---

amount lent to Sky View) and benefit of the bargain damages (18% interest under the loan documents)" and attorney's fees.

15

### C. Applying the One-Satisfaction Rule

Martinez asserts that the trial court was correct to deny settlement credits here because the one-satisfaction rule is limited to tort cases of joint and several liability. He asserts that there is no joint liability between the Sky View defendants and settling defendants because, though he argued that the Sky View defendants were jointly liable for nonpayment of the Martinez loan, he pled separate liability against each settling defendant and sought damages against each that he could recover only if a jury first found that the Sky View defendants were *not* liable. Martinez relies heavily on both our *Casteel* decision and on *GE Capital Commercial, Inc. v. Worthington National Bank*, 754 F.3d 297 (5th Cir. 2014), a case in which the Fifth Circuit made an *Eerie* guess as to whether this Court would apply the one-satisfaction rule to contract claims and without joint liability. *See* 754 F.3d at 305–08. We address these cases in turn.

In *Casteel*, the Fergusons, policyholders, sued Crown Life Insurance Company and one of its insurance agents, Casteel, alleging various causes of action. 22 S.W.3d at 381. The jury found for the Fergusons against both Crown and Casteel, but the Fergusons settled with Crown after the trial and assigned their claims against Casteel to Crown. *Id.* The trial court rendered judgment against Casteel for more than $1.3 million, but the court of appeals remanded, holding that Casteel was entitled to a credit against the judgment equal to the amount of the Fergusons' settlement with Crown. *Id.* at 382, 390. On Crown's appeal, this Court noted that though Crown and Casteel committed technically different acts, they caused the Fergusons "to suffer a single financial injury." *Id.* at 390–91. We then stated: "Under the one satisfaction rule, the nonsettling defendant may only claim a credit based on the damages for which all tortfeasors are jointly liable." *Id.* at 391. We held

16

that "the nonsettling defendant is entitled to offset any liability for joint and several damages by the amount of common damages paid by the settling defendant, but not for any amount of separate or punitive damages paid by the settling defendant," and thus, "Casteel is entitled to a credit for any settlement amount representing joint damages that Crown paid the Fergusons." *Id.* at 391–92.

Martinez relies on our statement that "the nonsettling defendant may *only* claim a credit based on the damages for which all tortfeasors are jointly liable," to argue that the one-satisfaction rule is limited to tort cases of joint and several liability. *See id.* at 391 (emphasis added). But in *Casteel*, this Court determined what credit a joint tortfeasor could recover after the trial court had already found him jointly liable and the tortfeasor did not challenge his joint liability. *See id.* at 390 n.8. We have never required a finding of joint liability before applying the one-satisfaction rule. *See, e.g.*, *First Title*, 860 S.W.2d at 76, 79 (applying the rule when the plaintiff filed two different lawsuits against settling and nonsettling defendants but the plaintiff suffered a single injury); *Stewart Title*, 822 S.W.2d at 8 (applying the rule without a finding that the settling and nonsettling defendants were jointly liable). We reject Martinez's argument that we should isolate the above statement from *Casteel*, which was made in the context of the facts of that case, and refuse to apply the one-satisfaction rule anywhere there has not been a finding of joint liability. Again, the rule is intended to prevent a plaintiff's double recovery based on a single injury, regardless of a legal conclusion of joint liability. *See First Title*, 860 S.W.2d at 79 ("Although not adjudicated to be joint tortfeasors, the title companies and the sellers cannot reasonably be said to have caused separate injuries."). If, as Martinez contends, the four settling defendants could only have been liable for

17

Martinez's injury if the Sky View defendants were *not* liable, that can be true for only one reason: his injury was single and indivisible.

Martinez also relies on the Fifth Circuit's decision in *Worthington*. *See* 754 F.3d at 305–09. In that case, GE and related plaintiffs sued Worthington National Bank under the Texas Uniform Fraudulent Transfer Act. *Id.* at 299. Worthington requested a settlement credit for proceeds the GE plaintiffs received in settlement of a contract dispute with Citibank, a third party the GE plaintiffs never actually sued. *Id.* at 304. The Fifth Circuit, making an *Erie* guess, predicted that this Court would not apply the one-satisfaction rule to contract cases and that an allegation of joint tortfeasor liability was required before applying the rule. *Id.* at 308 ("In sum, the one-satisfaction rule emerges in Texas Supreme Court jurisprudence as a tort law contribution doctrine, and its application has generally been limited to cases in which a plaintiff settles with an alleged joint tortfeasor.").

First, it is true that the one-satisfaction rule developed at common law around Texas's original contribution statute, which applies only to tort actions. *See Stewart Title*, 822 S.W.2d at 5. This development was necessary because the statute did not address the contribution implications of a partial settlement. *Id.* However, our precedent makes clear that the question of whether the one-satisfaction rule applies relies not on the cause of action asserted by the plaintiff, but on whether the plaintiff has suffered a single, indivisible injury. *Id.* at 7–8 ("[T]he fact that more than one defendant may have caused the injury or that there may be more than one theory of liability, does not modify this rule."). And, as one court of appeals reasoned, "[t]he one satisfaction rule is consistent with principles of contract law, which preclude a non-breaching party from recovering damages for breach of contract that would put the non-breaching party in a better position than if

18

the contract had been performed." *Metal Bldg. Components, LP v. Raley*, No. 03-05-00823-CV, 2007 WL 74316, *19 n.22 (Tex. App.—Austin Jan. 10, 2007, no pet.) (memo op.). Thus, most courts of appeals have concluded—as the court of appeals in this case did—that the common law one-satisfaction rule is not limited to tort claims, because whether it applies depends not on the cause of action asserted, but on the injury sustained. *See e.g.*, ___ S.W.3d at ___ ("The application of the rule is not limited to tort claims . . . ."); *Allan v. Nersesova*, 307 S.W.3d 564, 574 (Tex. App.—Dallas 2010, no pet.) (applying the rule when the plaintiff elected to recover on her breach-of-contract claim); *Galle, Inc. v. Pool*, 262 S.W.3d 564, 573–74 (Tex. App.—Austin 2008, pet. denied) (same); *Oyster Creek Fin. Corp. v. Richwood Invs. II, Inc.*, 176 S.W.3d 307, 327 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) ("[T]he absence of tort liability does not preclude the application of the one satisfaction rule."). Additionally, we have applied the rule in order to prevent double recovery in a case in which the jury made findings on both contract and tort damages. *See Waite Hill Servs., Inc. v. World Class Metal Works, Inc.*, 959 S.W.2d 182, 185 (Tex. 1998) (per curiam) (holding it was error for the trial court to refuse an election-of-remedy request when the jury awarded "contract, as well as tort damages, and the jury awarded the identical amount in response to both damages questions"). The Fifth Circuit relied on *CTTI Priesmeyer, Inc. v. K & O Ltd. Partnership*, 164 S.W.3d 675 (Tex. App.—Austin 2005, no pet.), to predict that this Court would not apply the rule outside of tort claims, *see Worthington*, 754 F.3d at 306–07, but the Third Court of Appeals has since overruled that decision on this point. *See Elness Swenson Graham Architects, Inc. v. RLJ II-C Austin Air, LP*, 520 S.W.3d 145, 165 (Tex. App.—Austin 2017, pet. pending).

Though *Worthington* ultimately concluded that the one-satisfaction rule does not apply to contract claims, the opinion notes that this Court has permitted "at most, application of the one-satisfaction rule where defendants are jointly liable, even when their common liability is not based in tort." 754 F.3d at 307 n.9 (discussing *El Paso Nat. Gas Co. v. Berryman*, 858 S.W.2d 362, 364 (Tex. 1993) (per curiam), in which this Court applied the rule in a case involving alter ego liability for usury when the two defendants were jointly and severally liable for damages assessed against the settling defendant). Martinez relies on this to argue that even if the one-satisfaction rule applies in contract cases, it should be limited to situations in which the plaintiff asserts that two or more defendants are jointly liable under the same contract because they have promised the same performance. But, as discussed above, a legal conclusion of joint liability is not required for application of the one-satisfaction rule. Though Martinez contracted separately with each settling defendant, the injury he complained of was the same—nonpayment of the Note.

Finally, Martinez asserts that the collateral-source rule should apply to prevent Sky View's settlement credits. "The collateral source rule bars a wrongdoer from offsetting his liability by insurance benefits independently procured by the injured party." *Mid-Century Ins. Co. of Tex. v. Kidd*, 997 S.W.2d 265, 274 (Tex. 1999). The theory behind the rule is that "a wrongdoer should not have the benefit of insurance independently procured by the injured party, and to which the wrongdoer was not privy." *Brown v. Am. Transfer & Storage Co.*, 601 S.W.2d 931, 934 (Tex. 1980). In *Brown*, we noted that if a payment is within the collateral-source rule, "the principle forbidding more than one recovery for the same loss is not applicable." *Id.* at 936. Martinez argues that because he was the named insured under Fidelity's title policy and Fidelity paid a $300,000

20

settlement, this payment from a collateral source prohibits that settlement credit. Further, citing a concurring opinion, Martinez argues that Kittleman and Walker were third parties acting for the benefit of Martinez, and therefore the collateral-source rule also bars settlement credits for those amounts. *See Tate v. Hernandez*, 280 S.W.3d 534, 543 (Tex. App.—Amarillo 2009, no pet.) (Campbell, J., concurring) ("The collateral source rule has historically been applied to situations in which a third party acts for the benefit of the plaintiff.").

Martinez stretches the bounds of the collateral-source rule too far. With regards to the Fidelity payment, Sky View correctly points out that the title policy was procured by Sky View, rather than Martinez.[13] This Court has held that in cases where the defendant procures insurance for the benefit of the plaintiff, the plaintiff cannot then rely on the collateral-source rule for a double recovery. *See Publix Theatres Corp. v. Powell*, 71 S.W.2d 237, 241–42 (Tex. 1934) (holding that a lessor could not recover from its lessee for lost property after collecting payment on an insurance policy that the lessee had purchased for the benefit of the lessor). Additionally, there is no evidence that the $300,000 payment from Fidelity constituted an insurance policy payment under the title policy; the only evidence of the payment in the record is the affidavit evidence Sky View presented as to the amount transferred and to which Martinez stipulated. As to the law firms, the only Texas case Martinez cites for this proposition is a concurrence to the court of appeals' opinion in *Tate*. *See generally* 280 S.W.3d at 541–44 (Campbell, J., concurring). But the concurrence, contrary to Martinez's argument, would have concluded that the collateral-source rule did *not* apply to the

---

[13] According to the HUD Settlement Statement for the Martinez loan, the payment for title insurance was under the column "Paid from Borrower's Funds at Settlement," and Sky View was the borrower.

payment at issue in that case—a discharge in bankruptcy of liability for medical expenses—in part because "[a]pplication of the collateral source rule has historically benefitted those with foresight to acquire insurance in advance of injury or at least in advance of treatment." *See id.* at 543 (citations omitted). Similarly, here, we conclude that lawsuits against former legal representatives for negligence and malpractice do not fall within that reasoning.

### III. Appellate Attorney's Fees

The only remaining issue is whether Martinez is entitled to the conditional attorney's fees that the trial court awarded in the event of Sky View's unsuccessful appeals. The trial court's judgment states:

> It is further ORDERED, ADJUDGED, AND DECREED that if [the Sky View defendants] unsuccessfully appeal this Final Judgment to an intermediate court of appeals, [Martinez] shall have and recover jointly and severally from [the Sky View defendants] an additional One Hundred Thousand Dollars . . . for reasonable and necessary attorney's fees in defending the appeal.

> It is further ORDERED, ADJUDGED, AND DECREED that if [the Sky View defendants] unsuccessfully appeal this Final Judgment to the Texas Supreme Court, [Martinez] shall have and recover jointly and severally from [the Sky View defendants] the following amounts: Ten Thousand Dollars . . . for representation at the petition for review stage; Fifty Thousand Dollars . . . for representation at the merits briefing stage; and Forty Thousand Dollars . . . for representation at the oral argument stage.

Although Sky View challenged the trial court's award of attorney's fees in the court of appeals, it has not raised a legal challenge to these attorney's fee awards in this Court. Rather, Sky View raises only the application of these fee awards to our disposition, arguing that if we hold that the Sky View defendants are entitled to settlement credits under the one-satisfaction rule, Martinez is not entitled to any of the conditional appellate attorney's fees awarded by the trial court and

22

affirmed by the court of appeals. *See* ___ S.W.3d at ___. Martinez disagrees, arguing that even if we were to hold that the Sky View defendants are entitled to the settlement credits, he is entitled to these fees because he was successful in the court of appeals as to the settlement-credits issue and Sky View's factual sufficiency challenge to the awarded attorney's fees.

A party should not be penalized for pursuing a meritorious appeal. *E.g.*, *Hoefker v. Elgohary*, 248 S.W.3d 326, 332 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (holding that an award of appellate attorney's fees must be conditioned upon the appellant's unsuccessful appeal); *Weynand v. Weynand*, 990 S.W.2d 843, 847 (Tex. App.—Dallas 1999, pet. denied) (same); *see also Ventling v. Johnson*, 466 S.W.3d 143, 155 (Tex. 2015) (noting that the underlying purpose of chapter 38 of the Texas Civil Practice and Remedies Code, which authorizes recovery of attorney's fees in breach-of-contract claims, is to "avoid penalizing a party for prosecuting a meritorious appeal and to discourage vexatious, time-consuming and unnecessary litigation") (internal quotations omitted). An award of conditional appellate attorney's fees "is essentially an award of fees that have not yet been incurred," and the party awarded such fees "is not entitled to recover [these fees] unless and until the appeal is resolved in that party's favor." *Ventling*, 466 S.W.3d at 156. Thus, "because an award of appellate attorney's fees depends on the outcome of the appeal, it is not a final award until the appeal is concluded and the appellate court issues its final judgment." *Id.* (quoting *Watts v. Oliver*, 396 S.W.3d 124, 134–35 (Tex. App.—Houston [14th Dist.] 2013, no pet.)).

As shown above, the trial court's judgment here provides for two separate conditional appellate attorney's fee awards—one dependent on the outcome in the court of appeals and one dependent on the outcome in this Court. As we explained in *Ventling*, this award is not final until

23

the last appellate court to review the case issues its final judgment. *See id.* Because we hold that the courts below erred in refusing to apply the one-satisfaction rule and failing to award the Sky View defendants settlement credits, this appeal has not been "resolved in [Martinez's] favor," and thus, Martinez is not entitled to recover any of the conditional appellate attorney's fees awarded by the trial court. *See id.*

## IV. Conclusion

For the reasons above, we hold that the Sky View defendants are entitled to reduce the judgment by the total amount of the four settlements Martinez received and any applicable interest. Accordingly, we reverse the court of appeals' judgment and remand the case to that court for calculation of the reduced judgment with appropriate interest, an issue the parties disputed in that court but was not raised in this Court. We also render judgment that Martinez is not entitled to any of the conditional appellate attorney's fees the trial court awarded because Sky View has successfully appealed the settlement-credits issue.

_____
Paul W. Green
Justice

OPINION DELIVERED: June 1, 2018