# IN THE SUPREME COURT OF TEXAS

═══════════════

No. 19-0117

═══════════════

REGENT CARE OF SAN ANTONIO, L.P., PETITIONER,

v.

ROBERT H. DETRICK AND CAROLYN DART DETRICK, RESPONDENTS

═══════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTH DISTRICT OF TEXAS

═══════════════════════════════

**Argued January 29, 2020**

JUSTICE BUSBY delivered the opinion of the Court.

This medical malpractice case presents two issues concerning the formation of a trial court's judgment as to damages. Robert Detrick and his wife sued a skilled nursing facility, claiming its nurses negligently failed to notify his doctors of a change in his condition. Detrick alleged that this failure led to a delay in diagnosing a compression of his spinal cord, resulting in his paralysis. Detrick also sued other defendants but settled with them before trial. A jury found for Detrick, holding the nursing facility 55% responsible for his injuries and awarding damages.

In this Court, the nursing facility challenges the trial court's application of a settlement credit and damages cap, as well as its finding that a certain amount of Detrick's medical expenses should be paid periodically. We hold that the trial court properly applied the settlement credit to reduce the claimant's recovery while separately applying the damages cap to reduce the

defendant's liability. We also hold that the trial court did not abuse its discretion in declining to order periodic payment of a larger amount of Detrick's medical expenses. We do not reach two other issues because they present no reversible error and discussing them would not add to the jurisprudence of the State. We therefore affirm.

## BACKGROUND

On November 26, Professor Robert Detrick was admitted to Regent Care Center of San Antonio, a skilled nursing facility, to receive short-term treatment for a rash prior to undergoing hip replacement surgery. He introduced evidence that he began experiencing incontinence after his admission, but nurses at Regent Care failed to notify his treating physicians—Drs. Nora Cubillos and Rohan Coutinho—of this change in his condition. Detrick grew progressively weaker and on December 9, when he could no longer feel or move his legs, he was transferred to the hospital. An MRI revealed a tumor in Detrick's spinal canal that had compressed his spinal cord. His paralysis proved to be permanent.

Evidence at trial showed that if Detrick had surgery even a few days earlier, he could have recovered and been able to walk. If the spinal cord is being compressed, surgery will alleviate the pressure, but more damage is possible the longer the compression lasts. Drs. Cubillos and Coutinho both testified that they would have ordered an MRI earlier had they been notified of Detrick's new-onset incontinence.

Detrick and his wife (collectively, Detrick) sued Regent Care as well as Drs. Cubillos and Coutinho and their medical practices.[1] Detrick settled with all defendants other than Regent Care for a total of $1,850,000. Regent Care elected a dollar-for-dollar settlement credit. *See*

---

[1] Detrick and his wife also sued Mobilex USA and Dr. Elliot Wagner for negligence in taking and interpreting x-rays of Detrick's back while he was at Regent Care.

2

TEX. CIV. PRAC. & REM. CODE § 33.012(c). Following trial, the jury found that Regent Care and each of the settling defendants were negligent and proximately caused Detrick's injury, and it apportioned 55% responsibility for the injury to Regent Care. The jury awarded economic damages of $3 million for future medical expenses, $390,000 for past medical expenses, and $245,000 for loss of household services. It also awarded $10,250,000 in noneconomic damages.

In applying the dollar-for-dollar settlement credit, the trial court calculated the percentages of economic versus noneconomic damages awarded by the jury and allocated the credit using those percentages, subtracting 27% of the credit from the economic damages and 73% from the noneconomic damages. The court then further reduced the noneconomic damages to $250,000 as required by the Texas Medical Liability Act (TMLA), leaving a total judgment of $3,399,371. *See id.* § 74.301(b). Regent Care requested that the entire award of damages for future medical care be paid in periodic payments, but the trial court ordered that $256,358 be paid over a 24-month period. *See id.* § 74.503(a).

Regent Care appealed, challenging the sufficiency of the evidence, the admission of expert testimony, the trial court's application of the settlement credit, and the amount of the trial court's award of periodic payments. 567 S.W.3d 752, 757 (Tex. App.—San Antonio 2018). The court of appeals reversed the award of damages to Detrick's wife for loss of household services (not at issue here) but otherwise affirmed the trial court's judgment. *Id.* at 771. The court held that the evidence was sufficient to support the jury's findings with regard to causation, past and future medical expenses, and allocation of responsibility. *Id.* at 761, 765, 768. The court also held that Regent Care failed to show the trial court abused its discretion in admitting Detrick's expert's testimony over objections that it was conclusory and speculative. *Id.* at 764–65. As to

damages, the court of appeals held that the trial court correctly applied the settlement credit and TMLA cap on noneconomic damages, and that its determination of the amount of future medical damages to be paid periodically was not an abuse of discretion. *Id.* at 770–71.

In this Court, Regent Care asserts that the trial court should have applied the settlement credit *after* determining the capped noneconomic damages. Regent Care also challenges the trial court's order that $256,358 be paid periodically, asserting that this amount is entirely unsupported by the evidence. Finally, Regent Care challenges the sufficiency of the evidence of causation and the admission of expert testimony regarding past medical damages.

## ANALYSIS

## I. The trial court properly applied the settlement credit and damages cap separately.

We first address Regent Care's issue concerning whether the trial court properly applied the statutory settlement credit and damages cap in its judgment. Statutory construction involves questions of law that we review de novo. *Cadena Comercial USA Corp. v. Tex. Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 325 (Tex. 2017).

Chapter 33 of the Civil Practice and Remedies Code instructs trial courts how to determine a claimant's recovery as well as a defendant's liability in cases involving findings of proportionate responsibility, including cases in which some parties have settled. A claimant's recovery and a defendant's liability are distinct concepts, and each must be calculated and applied separately. *Roberts v. Williamson*, 111 S.W.3d 113, 123 (Tex. 2003). That principle is the key to understanding the correct resolution of this issue.

One section of Chapter 33, which Regent Care elected to apply here, addresses how settlements of health care liability claims affect a claimant's recovery:

4

> [I]f the claimant in a health care liability claim . . . has settled with one or more persons, the court shall . . . reduce the amount of damages to be recovered by the claimant with respect to a cause of action by an amount equal to . . . the sum of the dollar amounts of all settlements.

CIV. PRAC. & REM. CODE § 33.012(c)(1). Chapter 33 also generally limits a defendant's liability for damages based on the jury's finding of that defendant's proportionate responsibility for the harm, but this limit does not apply here because the jury found Regent Care more than 50% responsible. *Id.* § 33.013(b)(1). Other statutes outside Chapter 33 also limit a defendant's liability for damages. As relevant here, the TMLA provides that when judgment is rendered against a single health care institution, "the limit of civil liability for noneconomic damages of the [defendant] shall be limited to an amount not to exceed $250,000 for each claimant." *Id.* § 74.301(a).

In forming its judgment, the trial court applied these statutes as follows. The jury awarded $3,635,000 in economic damages and $10,250,000 in noneconomic damages. The trial court calculated that prejudgment interest on past damages was $51,375, so the total amount of the verdict plus prejudgment interest was $13,936,375. Turning to the settlement credit under section 33.012(c), the trial court applied the $1.85 million credit first to prejudgment interest as required by *Battaglia v. Alexander*, 177 S.W.3d 893, 908 (Tex. 2005). The court applied the remaining credit of $1,798,625 by determining what percentage of the jury's damage awards were for economic damages (27%) versus noneconomic damages (73%) and allocating the credit using those percentages.[2] Using this method, the court reduced the claimant's economic

---

[2] Regent Care did not challenge this allocation of the settlement credit between economic and noneconomic damages in its merits briefing, and we therefore express no opinion on the matter. The court of appeals noted that a similar allocation was used in *Christus Health Gulf Coast v. Houston*, No. 01-14-00399-CV, 2015 WL 9304373, at *8 (Tex. App.—Houston [1st Dist.] Dec. 22, 2015, no pet.). We recently discussed the general principles governing allocation of settlement credits in *Sky View at Las Palmas, LLC v. Mendez*, 555 S.W.3d 101, 107–08 (Tex. 2018).

damages by $485,629 (27% of $1,798,625) and noneconomic damages by $1,312,996 (73% of $1,798,625). This reduction left Detrick a recovery of $3,149,371 in economic damages and $8,937,004 in noneconomic damages. The court then capped Regent Care's liability for noneconomic damages at $250,000 as required by section 74.301. The court therefore rendered judgment that Detrick recover from Regent Care $3,149,371 in economic damages and $250,000 in noneconomic damages.

Regent Care contends the trial court erred because the applicable statutes required it to apply the $1.85 million settlement credit after capping the noneconomic damages. Regent Care's position is that under section 33.012, the amount received in settlement must reduce the "damages to be recovered," not the damages awarded by the jury. Here, it contends, the noneconomic damages to be recovered by Detrick were $250,000. Therefore, the settlement credit should have been applied to that amount, not to the full amount of noneconomic damages found by the jury. Detrick responds that the trial court's approach of first applying the settlement credit before imposing the statutory cap on recovery is consistent with caselaw and the statutory language.

The court of appeals and Detrick rely on *Edinburg Hospital Authority v. Trevino*, in which we considered whether a settlement must be offset before or after applying the Texas Tort Claims Act's damages cap. 941 S.W.2d 76, 81–82 (Tex. 1997). The claimant in that case sued Edinburg Hospital Authority, a governmental unit whose liability for damages was capped under the Tort Claims Act. *Id.* at 78, 81 (citing CIV. PRAC. & REM. CODE § 101.023). The claimant settled with another defendant before trial and then obtained a jury verdict against the Hospital

6

Authority for $750,000. *Id.* at 81. The trial court first offset that verdict by the settlement amount and then reduced the plaintiff's recovery to the statutory cap. *Id.*

We rejected the Hospital Authority's argument that it was liable only for its liability cap minus the settlement amount, explaining that the cap in the Tort Claims Act did not "circumscribe a plaintiff's total *recovery* for a given injury. Instead, it delineates the extent of the government's waiver of immunity from *liability* for that injury." *Id.* (emphasis added). Because "the settlement does not affect the maximum dollar amount" of the government's liability for damages, "[a] settlement with one tortfeasor should . . . be offset *before* the verdict against the governmental unit is reduced to the statutory maximum." *Id.* at 82. We observed that a contrary rule "would completely bar recovery against a tortfeasing municipal hospital authority when a plaintiff settles with another defendant for more than the hospital authority's damages cap," which "cannot be the intent of the Legislature." *Id.*

Regent Care asserts that *Trevino* does not apply here because it cannot supplant section 33.012(c)'s mandate that settlement credits reduce "the amount of damages *to be recovered* by the claimant." CIV. PRAC. & REM. CODE § 33.012(c) (emphasis added). But the distinction we made in *Trevino* between a claimant's recovery and a defendant's liability shows why this argument is incorrect. Section 74.301's cap limits an individual defendant's "liability for noneconomic damages"; it does not address the total amount a claimant may recover from all defendants and settling persons.

We also applied this distinction in *Roberts v. Williamson*, which considered whether a settlement credit should have been applied before reducing a defendant's liability based on a proportionate responsibility finding under Chapter 33. 111 S.W.3d at 122. We discussed the

7

proportionate responsibility and settlement credit statutes and noted that "although related, the two sections pose separate inquiries." *Id.* at 123 (comparing CIV. PRAC. & REM. CODE §§ 33.012, .013). We explained that the plaintiffs' recovery was limited to the amount of damages found by the jury minus the settlement credit, but that limit was "independent of section 33.013's limitation on a particular defendant's percentage of responsibility." *Id.*

Similarly here, one statute controls the claimant's recovery while a different one governs the defendant's liability. *See id.* The "damages to be recovered by the claimant"—the amount of damages found by the jury minus any settlement credits—are independent of a defendant health care institution's "limit of civil liability for noneconomic damages" under the TMLA. *See* CIV. PRAC. & REM. CODE §§ 33.012(c), 74.301(b). Because Regent Care's liability for noneconomic damages is limited to $250,000 under section 74.301(b), and that figure does not exceed the amount Detrick may recover under section 33.012, "no further credit is required." *Roberts*, 111 S.W.3d at 123. This method of calculation does not run afoul of the one satisfaction rule because when the "damages to be recovered" are reduced by the amount of a settlement, as they were here, a claimant does not obtain "more than one recovery for the same injury." *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 7 (Tex. 1991); *see also Trevino*, 941 S.W.2d at 82. We therefore agree with the court of appeals that the trial court properly applied the settlement credit and damages cap, and we overrule this issue.

## II. The amount of periodic payments awarded was not an abuse of discretion.

In its second issue, Regent Care asserts the trial court abused its discretion by ordering that $256,358 in future medical damages be paid periodically because that figure is unsupported by the evidence and does not conform to the verdict. Under Subchapter K of the TMLA, "[a]t

8

the request of a defendant physician or health care provider or claimant, the court shall order that [future damages for] medical, health care, or custodial services awarded in a health care liability claim be paid in whole or in part in periodic payments rather than by a lump-sum payment." CIV. PRAC. & REM. CODE § 74.503(a); *see id.* § 74.501(1) (clarifying that statute applies to awards of future damages for such services). Periodic payments are to be made "to the recipient of future damages at defined intervals." *Id.* § 74.501(3).

The jury found that $3 million, "if paid now in cash," would compensate Detrick for his future medical expenses. After trial, Regent Care asked the court to order payment of the jury's entire award periodically over five to eight years. Detrick responded that before considering what portion of future medical expenses should be paid periodically, the trial court should subtract the attorneys' fees and expenses Detrick would be required to pay upon judgment, leaving $1,256,358. Based on the evidence at trial as well as post-trial expert affidavits, Detrick argued the jury reasonably could have concluded he would incur medical costs in the range of $800,000 to $1 million annually. Detrick therefore asked the court to order Regent Care to pay $1 million in a lump sum and the remaining $256,358 monthly. The trial court's judgment ordered Regent Care to pay $256,358 periodically in twenty-four monthly installments.

When a trial court orders periodic payments, it "shall make a specific finding of the dollar amount of periodic payments that will compensate the claimant for the future damages" and shall specify the amount, number, timing, and recipient of those payments in its judgment. *Id.* § 74.503(c)–(d).[3] Regent Care argues that the amount found by the trial court must be supported

---

[3] We note that Subchapter K does not apply unless a party so requests and the present value of the future damages award equals or exceeds $100,000. *See* CIV. PRAC. & REM. CODE §§ 74.502–.503. Both of those prerequisites are met. In addition, if a defendant requesting periodic payments is not adequately insured, the court

by sufficient evidence in the record. It acknowledges that a court may order only part of the future medical damages paid periodically if, for example, the record shows a lump-sum payment is warranted to meet expenses expected soon after trial. But it contends the record does not support the split between periodic and lump-sum payments ordered here.

Detrick responds that the statutory language gives the trial court discretion to order only part of the future damages paid periodically, and the court complied with the statute. In Detrick's view, the trial court did not abuse its discretion in rejecting Regent Care's request that the entire $3 million award be paid periodically, as Regent Care did not point to any evidence supporting that request. Detrick notes that Regent Care made no provision for the fees and expenses due immediately, and that paying the jury's award periodically would undercompensate him because the award was in present value.

We review a trial court's order for periodic payments for an abuse of discretion.[4] The court may order that an award of future medical expenses be paid periodically either in whole or in part, but the "dollar amount" of the "periodic payments" it orders must be the amount that evidence shows will "compensate the claimant for the future damages." *Id.* § 74.503(c). In other words, any division between lump-sum payments and periodic payments of damages that will be "incurred after the date of judgment" must be founded in the record. *Id.* § 74.501(1). The party requesting an order for periodic payments has the burden to identify for the trial court evidence regarding each of the findings required by section 74.503, and the findings must be supported by

must require the defendant to provide evidence of financial responsibility sufficient to assure full payment of the damages awarded. *See id.* § 74.505(a). The trial court found that Regent Care did so here.

[4] *See Pedernal Energy, LLC v. Bruington Eng'g, Ltd.*, 536 S.W.3d 487, 492 (Tex. 2017) ("If a statute vests trial courts with discretion as to a matter, then we review a trial court's decision as to that matter for abuse of discretion."); *see also* CIV. PRAC. & REM. CODE § 74.503(a) (providing that a trial court shall order periodic payments "in whole *or* in part" (emphasis added)).

10

sufficient evidence. *See Granado v. Meza*, 398 S.W.3d 193, 194–95 (Tex. 2013) (per curiam). The trial record may not contain all of the evidence necessary to make the required findings,[5] and the trial court has discretion to receive additional evidence for that purpose. Such evidence may not be used to contradict the jury's findings on any issues submitted to it, however. Subchapter K gives the trial court no discretion to craft its own award of damages inconsistent with the jury's verdict.

Applying these principles, we agree with Regent Care that the specific amount the trial court ordered to be paid periodically—$256,358—is not supported by sufficient evidence. Evidence at trial showed that Detrick's life expectancy was six to eight years. Detrick's expert opined that $250,000 was an appropriate and supportable figure for his annual care, including both hospital and nursing home care. He testified that the annual cost of Detrick's care could increase to $500,000, however. There was also evidence that Detrick could benefit from private nursing care, which would cost up to an additional $150,000 per year. The jury awarded $3 million in damages for future medical care, which was within the range of evidence.

But no evidence indicated that only $256,358 of these medical expenses would be incurred periodically. In proposing that figure, Detrick started with the jury's $3 million award and subtracted attorneys' fees and expenses he owed upon judgment, leaving $1,256,358. Subchapter K contemplates that fees will be considered in awarding periodic payments,[6] and Regent Care does not argue that the trial court abused its discretion in taking account of fees and

---

[5] Indeed, all parties may not even know until after trial that periodic payments are being requested.

[6] *See* CIV. PRAC. & REM. CODE § 74.507 ("For purposes of computing the award of attorney's fees when the claimant is awarded a recovery that will be paid in periodic payments, the court shall: (1) place a total value on the payments based on the claimant's projected life expectancy; and (2) reduce the amount in Subdivision (1) to present value.").

11

expenses here. Even with that subtraction, however, the evidence just summarized cannot support a finding that Detrick would incur $1 million for medical care services soon after trial, leaving $256,358 to be paid periodically.

Nevertheless, Regent Care is not entitled to reversal unless this error harmed it[7]—that is, unless the trial court had discretion to order that a larger amount of Detrick's damages be paid periodically. We conclude such an order would be an abuse of discretion on this record because Regent Care did not point the court to any evidence supporting its request that the entire $3 million award be paid periodically, nor to evidence of *any* specific dollar amount of medical expenses that would be incurred periodically. At trial, the parties presented their evidence regarding damages solely in present values without detailing how those damages were discounted, and the jury found the amount that would fairly and reasonably compensate Detrick for future medical care expenses "if paid now in cash." No party requested that the jury find the amount that would compensate Detrick if paid periodically—unsurprisingly, as Subchapter K had not yet been invoked. Nor did Regent Care offer evidence post-trial from which the trial court could make such a finding. We agree with Detrick that simply ordering the jury's present-value damages award to be paid in periodic installments—whether in whole or in part—would be an abuse of discretion here because it would effectively "double discount" the award, undercompensating him for the expenses he would incur in each future period.[8] *See* CIV. PRAC.

---

[7] *See* TEX. R. APP. P. 44.1(a)(1).

[8] An amicus acknowledges this problem but suggests it could be overcome, for example, by requiring the defendant to purchase an annuity with the entire present-value amount of the damages the trial court finds should be paid periodically. *See* CIV. PRAC. & REM. CODE § 74.505(b)(1). Detrick responds that this approach would only compensate the claimant for his future damages if the annuity's interest rate corresponded to the likely future rate of growth of medical costs. We do not address this issue because the trial court did not order an annuity and, in any event, the record includes no evidence regarding the proper rate.

& REM. CODE § 74.503(c) (requiring trial court to find dollar amount of periodic payments that will "compensate the claimant for the future damages").

Because no other order was possible given the evidence before it, we hold the trial court did not abuse its discretion by declining to order that more of the damages Regent Care owed Detrick be paid periodically. We therefore overrule Regent Care's second issue.

### III. Regent Care's sufficiency challenges present no reversible error.

Regent Care also challenges the sufficiency of the evidence to support the jury's findings on causation and past medical damages. Having independently reviewed these issues, we conclude they present no error requiring reversal. The court of appeals' judgment is correct, and further discussion of the issues would not add to the jurisprudence of the State. In reaching this conclusion, we express no opinion on the court of appeals' reasoning.[9]

CONCLUSION

We hold the trial court properly applied the settlement credit and liability cap in determining Regent Care's liability. We also hold that the trial court did not abuse its discretion in its order of periodic payments. We therefore affirm the judgment of the court of appeals.

_____
J. Brett Busby
Justice


**OPINION DELIVERED:** May 8, 2020

---

[9] *See, e.g.*, *In re L.G.*, ___ S.W.3d ___, ___ (Tex. 2020) (per curiam); *City of Waco v. Abbott*, 209 S.W.3d 104, 105 (Tex. 2006) (per curiam); *Engelman Irrigation Dist. v. Shields Bros., Inc.*, 989 S.W.2d 360, 360 (Tex. 1998) (per curiam); *W. Tex. Gulf Pipe Line Co. v. Hardin County*, 321 S.W.2d 576, 577 (Tex. 1959) (per curiam); *cf.* TEX. R. APP. P. 56.1(b)(1).