**Opinion filed May 9, 2019**



## In The

# Eleventh Court of Appeals

_____

## No. 11-17-00112-CV

_____

## MILTON JONES, JR., Appellant

## V.

## GEORGE D. PATTERSON, Appellee

**On Appeal from the 259th District Court**
**Jones County, Texas**
**Trial Court Cause No. 023467**

### M E M O R A N D U M   O P I N I O N

This is an appeal from a bench trial. Appellant, Milton Jones, Jr., appeals the trial court's judgment denying his claims for breach of contract, conversion, quantum meruit, and a statutory worker's lien. To the contrary, the trial court entered a judgment in favor of Appellee, George D. Patterson, on his counterclaim for civil theft under the Texas Theft Liability Act. Appellant raises four issues on appeal.

We reverse and remand that portion of the judgment awarding attorney's fees to Appellee. Otherwise, we affirm the judgment of the trial court.

*Background Facts*

This dispute between family members arises out of a transaction involving Appellee's 2007 BMW 525 vehicle. The parties vigorously dispute the nature and details of this transaction. Appellant asserts that he and Appellee entered into a contract for the sale of Appellee's vehicle and that Appellee wrongfully retook possession of the vehicle. Appellee contends that he never agreed to sell his vehicle to Appellant and that Appellant stole and subsequently damaged his vehicle.

Appellant was married to Judi Jones, Appellee's mother. Appellant and Jones[1] lived in Hamlin. Appellant testified that, while he and Jones were visiting Appellee in Hurst, Appellee offered to sell his vehicle to Appellant for $15,000. Appellant claims that the parties orally agreed to a down payment of $10,000 and monthly installments of $494 until the purchase price was fully paid.

Appellant and Jones returned to Hamlin with the vehicle. Before leaving, Appellant claims that he instructed Jones to give Appellee $10,000 in cash and obtain a signed receipt. Appellant stated that Jones provided Appellant with two documents, one which stated: "I, George Patterson, am selling Judi & Milton Jones my BMW [VIN] for 15,000.00. Ten thousand down & 494.00 month." The document appears to bear Appellee's signature. The other document contained Appellee's bank account number for the deposit of the monthly installments.

Conversely, Jones and Appellee assert that Appellee never agreed to sell his vehicle. Instead, they assert that Appellee only agreed to allow Jones to borrow the vehicle in exchange for her paying the monthly payments still owed by Appellee on

---

[1]All references to "Jones" in this opinion are to Judi Jones.

2

the vehicle. They testified that Appellant never made a $10,000 down payment. Appellee denied writing or signing the document purporting to sell his vehicle to Appellant. Jones testified that she wrote the document and forged Appellee's signature on it. She claimed that Appellant demanded that she "fix [him] a receipt" for the vehicle during an argument. Appellant subsequently moved out of Jones's house, taking the vehicle with him.

A few months later, the parties began disputing rightful possession of the vehicle as each attempted to reclaim possession of the vehicle from the other party. Appellant took the vehicle from Jones's house, explaining at trial that he believed she was not taking care of the vehicle. Appellant testified that he prevented Jones and Appellee from taking the vehicle from Appellant's residence on multiple occasions, some of which included police intervention. Appellee testified that he spoke with the Hamlin Police Department and the Jones County District Attorney about how to legally recover his vehicle from Appellant.

Appellant subsequently reported to the Hamlin Police Department that the vehicle had been vandalized. Appellant and Jones had obtained insurance through Affirmative Insurance Company for the vehicle, and Appellant filed an insurance claim with Affirmative for the vandalism. Appellant operated an auto body shop business at his home, and he attempted to repair the damage himself by painting part of the vehicle with a metal flake finish. Appellant asserts that he and Appellee agreed that Appellant would pay Appellee the balance due of the purchase price out of the insurance payment and retain the remaining amount for his services. Affirmative sent a check for $3,968.87 directly to Appellee because title to the vehicle remained in Appellee's name. However, Appellee deposited the check and retained the full amount.

About a month later, Jones successfully removed the vehicle from Appellant's garage and drove it to Appellee's residence in Hurst. Appellee filed a claim with his insurance provider, Progressive Insurance Company. Progressive determined that the vehicle was a total loss. Appellee received $11,087.62 from Progressive for the totaled vehicle.

Appellant filed suit against Appellee seeking relief for breach of contract, conversion, quantum meruit, and a statutory worker's lien. Appellee filed an answer denying the existence of an oral or written contract for the sale of his vehicle and asserting a counterclaim under the Texas Theft Liability Act (TTLA). Following a bench trial, the trial court entered judgment denying all relief requested by Appellant and awarding Appellee $6,634.13 in damages and $9,000 in attorney's fees under the TTLA.

*Analysis*

Appellant presents four issues on appeal challenging the legal and factual sufficiency of the evidence. In his second issue, Appellant challenges the legal and factual sufficiency of the evidence supporting the trial court's finding that Appellee's signature on the alleged agreement was forged. The trial court entered the following finding of fact: "George D. Patterson did not sign the agreement introduced into evidence which purported to sell the vehicle to Milton Jones, Jr., although the document purported to be executed by George D. Patterson." The threshold inquiry in a breach-of-contract action is whether an enforceable agreement exists between the parties. *Hussong v. Schwan's Sales Enters., Inc.*, 896 S.W.2d 320, 326 (Tex. App.—Houston [1st Dist.] 1995, no writ). Because a forgery finding results in the lack of a valid contract, the trial court's finding precluded Appellant's recovery on his breach-of-contract claim.

4

When reviewing the sufficiency of the evidence to support the trial court's express or implied findings, we apply the same standards of review that apply to a jury's verdict. *See MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 663 n.3 (Tex. 2009) (citing *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994)). Appellee had the burden of proof on his affirmative defense of forgery. *See Am. Petrofina, Inc. v. Allen*, 887 S.W.2d 829, 830 (Tex. 1994). When the appellant challenges the legal sufficiency of the evidence supporting an adverse finding on which he did not have the burden of proof at trial, he must demonstrate that there is no evidence to support the adverse finding. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). Under a legal sufficiency review, we consider all of the evidence in the light most favorable to the prevailing party, make every reasonable inference in that party's favor, and disregard contrary evidence unless a reasonable factfinder could not. *City of Keller*, 168 S.W.3d at 807, 822, 827. We cannot substitute our judgment for that of the factfinder if the evidence falls within this zone of reasonable disagreement. *Id.* at 822.

The evidence is legally insufficient to support a finding only if (1) the record discloses a complete absence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the only evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *Id.* at 810. "Anything more than a scintilla of evidence is legally sufficient to support the finding." *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998). "More than a scintilla of evidence exists when the evidence would enable reasonable and fair-minded people to reach different conclusions."

5

*Burbage v. Burbage*, 447 S.W.3d 249, 259 (Tex. 2014). "However, if the evidence is so weak that it only creates a mere surmise or suspicion of its existence, it is regarded as no evidence." *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 156 (Tex. 2014).

As noted previously, the details of the transaction according to Appellant vary greatly from the testimony of Jones and Appellee. Appellant claimed that Appellee agreed to sell his vehicle to Appellant and that Appellant instructed Jones to give Appellee the $10,000 and obtain a signed receipt. Dale B. Stobaugh, Appellant's expert witness, testified that there were "indications" that the person who wrote the contract may not have been the same as the person who signed it. However, he could not determine with "[v]irtual certainty" or "certainty" whether the document was forged, and his conclusion was only one level of certainty above "inconclusive." Stobaugh further testified that his determination was "[j]ust based on a cursory exam" of the purported contract because he did not have a "full complement of known writings . . . attributed to [Appellee]."

Both Jones and Appellee testified that there was no oral or written agreement for Appellee to sell his vehicle to Appellant. Appellee testified that he did not discuss selling the vehicle with Appellant, write any part of the document purporting to be a contract to sell his vehicle to Appellee, nor sign the document. Jones testified that she prepared the document and forged Appellee's signature. Jones also testified that Appellee did not ask her to write the document, had no knowledge that she was signing it, and received no money for a sale of the vehicle. Jones testified that Appellant demanded that she "fix [him] a receipt" for the vehicle a few months after they returned to Hamlin with Appellee's vehicle. She testified that she created the document because she "was scared [Appellant] was going to hit [her] with [a] bat."

6

Appellant premises his evidentiary challenge on alleged deficiencies in the testimony of Jones and Appellee. He asserts that Jones's testimony was "mostly excited, confused, and unintelligible." Appellant contends that Jones was not a credible witness in light of her criminal history. With respect to Appellee, Appellant contends that Appellee's testimony was "outrageous" and "confused" based upon Appellee's inability to recall various matters. Appellant attributed this confusion to "head trauma" suffered by Appellee in some auto accidents.

Evidence is legally sufficient if it "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004) (quoting *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). The testimony of Jones and Appellee that the contract was forged is evidence supporting the forgery finding. Because it is the factfinder's responsibility to weigh credibility and resolve conflicts in the evidence, we will defer to those determinations so long as they are reasonable. *See City of Keller*, 168 S.W.3d at 820. The trial court's reliance on the testimony of Jones and Appellee was not unreasonable. In this regard, their testimony was not conclusively negated by undisputed facts. Accordingly, we conclude that the forgery finding is supported by legally sufficient evidence.

Appellant also challenges the factual sufficiency of the evidence supporting the forgery finding. If a party attacks the factual sufficiency of an adverse finding on an issue in which the other party had the burden of proof, the attacking party must demonstrate that there is insufficient evidence to support the adverse finding. *Croucher*, 660 S.W.2d at 58. In a factual-sufficiency challenge, we consider and weigh all of the evidence, both supporting and contradicting the finding. *See Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998). We may set aside

7

the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* at 407. We may not substitute our own judgment for that of the factfinder or pass upon the credibility of witnesses. *Id.*

Appellant also premises his factual sufficiency challenge to the forgery finding on deficiencies that he alleges exist in the testimony of Jones and Appellee. The trial court's reliance on their testimony was largely a credibility determination to which we defer. Furthermore, the evidence that Appellee's signature on the document was not a forgery is not so overwhelming as to render the forgery finding clearly wrong and unjust. Accordingly, there is factually sufficient evidence supporting the trial court's forgery finding. We overrule Appellant's second issue.

In his first issue, Appellant challenges the legal and factual sufficiency of the trial court's award of a recovery to Appellee under Appellee's TTLA counterclaim. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 134.001–.005 (West 2019). Appellant challenges both the adverse finding of liability against him under the TTLA and the award of damages to Appellee under the TTLA.

The TTLA provides for civil liability for criminal theft: "A person who commits theft is liable for the damages resulting from the theft." *Id.* § 134.003(a). The TTLA defines "theft" as "unlawfully appropriating property or unlawfully obtaining services as described by Section 31.03, 31.04, 31.06, 31.07, 31.11, 31.12, 31.13, or 31.14, Penal Code." *Id.* § 134.002(2). Under the TTLA, a person "who has sustained damages resulting from theft" may recover "the amount of actual damages found by the trier of fact and, in addition to actual damages, damages awarded by the trier of fact in a sum not to exceed $1,000." *Id.* § 134.005(a)(1). The prevailing party is also entitled to court costs and reasonable and necessary attorney's fees. *Id.* § 134.005(b).

8

Appellee did not specify in his counterpetition which section of the Penal Code he alleged Appellant violated. However, the trial court's findings of fact and conclusions of law provide that Appellant "took or appropriated the vehicle" in violation of Section 31.03 of the Penal Code and that Appellant "operated a motor propelled vehicle without the consent of . . . the owner of the vehicle" in violation of Section 31.07 of the Penal Code. *See* TEX. PENAL CODE ANN. § 31.03 (theft), § 31.07 (unauthorized use of a vehicle) (West 2019).

Appellant argues that the trial court erred in awarding Appellee a recovery under the TTLA because Appellee's theft claim fails on its merits. Specifically, Appellant asserts that there is no evidence of Appellant's intent to deprive Appellee of his property or that Appellant appropriated the car without Appellee's consent. *See* PENAL § 31.03(a), (b)(1). In advancing this argument, Appellant relies on his subjective belief that he was purchasing the vehicle and, thus, his subjective belief that he was in rightful possession of the vehicle. He further contends that he had no knowledge that the contract may have been forged and that he and Jones obtained possession of the vehicle with Appellee's consent.

Appellant also asserts that the evidence of theft is legally insufficient because "there existed a bona fide dispute about the ownership of the vehicle and the validity of the contract." Appellant cites *Bokor v. State*, 114 S.W.3d 558, 560 (Tex. App.—Fort Worth 2002, no pet.), in support of this contention. In *Bokor*, the Fort Worth Court of Appeals stated that, "[i]f a bona fide dispute exists as to the ownership of the property, then the evidence is legally insufficient to sustain a theft conviction." 114 S.W.3d at 560. However, "[w]hile a property dispute may negate the requisite criminal intent, the focus of our inquiry is not on whether a property dispute existed, but rather whether the requisite criminal intent exists." *Potter v. State*, No. 06-11-

9

00204-CR, 2012 WL 1556093, at *3 (Tex. App.—Texarkana May 3, 2012, no pet.) (mem. op., not designated for publication). "The issue in such a circumstance is whether the contractor had the requisite criminal intent to unlawfully deprive." *Id.* (citing *Ehrhardt v. State*, 334 S.W.3d 849, 854 (Tex. App.—Texarkana 2011, pet. ref'd)).

A person commits theft when he unlawfully appropriates property with the intent to deprive the owner of that property. PENAL § 31.03(a). The intent to deprive can be inferred from the words and acts of the person. *Banks v. State*, 471 S.W.2d 811, 812 (Tex. Crim. App. 1971). As we have already discussed with respect to Appellant's second issue, there is legally and factually sufficient evidence to support the trial court's forgery determination. A forged document is void *ab initio* and is a nullity. *See Dwairy v. Lopez*, 243 S.W.3d 710, 712 (Tex. App.—San Antonio 2007, no pet.) (citing *Hennessy v. Blair*, 173 S.W. 871, 874 (Tex. 1915)). Furthermore, there is evidence that Jones prepared the forged contract at Appellant's direction.

When we consider the evidence in the light most favorable to the trial court's findings, a reasonable factfinder could have rejected Appellant's claims that he and Appellee had entered a contract for the sale of Appellee's vehicle. Thus, a rational factfinder could reject Appellant's claims that he never intended to deprive Appellee of his property and that he did not appropriate the vehicle without Appellee's consent because he was legally entitled to possess the vehicle. The trial court was also entitled to believe Appellee's and Jones's testimony that Appellee never sold his vehicle to Appellant and did not consent to Appellant's use or continued use of the vehicle. Accordingly, we conclude that there was more than a scintilla of evidence for the trial court to infer from Appellant's conduct that he appropriated Appellee's car with the intent to deprive Appellee of his property. Furthermore, this

10

determination by the trial court was not against the great weight and preponderance of the evidence.

Appellant additionally asserts that he was authorized by law to maintain possession of the vehicle after he performed repairs on it until he received payment for the repairs. In this regard, he asserts that he held a valid mechanic's lien on the vehicle. *See* TEX. PROP. CODE ANN. § 70.001 (West Supp. 2018). We disagree. Only repairs or improvements that are authorized by the owner of a vehicle will give rise to a mechanic's lien. *See Drake Ins. Co. v. King*, 606 S.W.2d 812, 818 (Tex. 1980), *superseded by rule*, TEX. R. EVID. 801(e)(2), *on other grounds as recognized in Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 235 (Tex. 2007).

Appellee testified that he did not discuss paint repairs on the vehicle with Appellant. Appellee also denied agreeing to divide the insurance proceeds with Appellant. Appellee noted that the objectionable paint job was itself considered vandalism by him, by an independent body shop, and by Progressive. Given this evidence, a reasonable factfinder could have found that Appellee did not authorize the paint services performed by Appellant, thereby nullifying Appellant's alleged mechanic's lien.

Finally, Appellant also argues that there is legally insufficient evidence that Appellee sustained damages as a result of the theft. *See* CIV. PRAC. & REM. § 134.005(a). The trial court awarded Appellee $6,634.13 in damages. In order to understand this damage issue, it is helpful to review the damages sought by both parties. During closing argument, Appellant sought damages of $16,438.87 for the car calculated as follows: the sum of the alleged initial payment of $10,000, 5 monthly payments of $494 ($2,470), and the check in the amount of $3,968.87 paid by Affirmative to Appellee. Appellee sought damages of $6,945 for the vehicle,

calculated as follows: the value of the car when Appellant originally obtained possession of it ($22,000) less $15,055 in insurance payments received by Appellee from Affirmative and Progressive.[2] In response to Appellee's claim for damages, Appellant asserted during closing argument that the vehicle had a value of under $12,000 based upon Progressive's estimate of the vehicle's value. Accordingly, Appellant argued that Appellee has been "overcompensated" for the theft loss because he also received the payment from Affirmative in the amount of $3,968.87 in addition to the $11,087.62 paid by Progressive.

Appellant first asserts that Appellee's testimony is insufficient as to the value of the vehicle. Appellant asserts that Appellee's testimony did not satisfy the "property owner rule" for market value testimony as set out in *Natural Gas Pipeline Co. of America v. Justiss*, 397 S.W.3d 150, 157–59 (Tex. 2012). Accordingly, Appellant asserts that we should ignore Appellee's starting point value of $22,000 for the car. Appellant asserts that, since Appellee recovered the car, his only claim for damages is for loss of use during the period of wrongful detention and that no evidence of damages for loss of use was presented. Appellant also contends that there is no evidence that the paint work he performed on the vehicle caused damage to it.

Under the TTLA, a person who commits theft as defined by the Texas Penal Code "is liable for the damages resulting from the theft." CIV. PRAC. & REM. § 134.003(a). If we look to the law of conversion, the general measure of damages is the fair market value of the property at the time and place of the conversion. *United Mobile Networks, L.P. v. Deaton*, 939 S.W.2d 146, 147–48 (Tex. 1997). While Appellee regained possession of the vehicle, Progressive deemed the vehicle

---

[2]Appellee actually received $11,087.62 from Progressive and $3,968.87, which totals $15,056.49.

to be a total loss, and it took possession of the vehicle upon its payment to Appellee. Accordingly, we disagree with Appellant's contention that Appellee was restricted to seeking damages for loss of use.

Appellant asserted during closing argument that the "proper measure of the value" of the vehicle "was under $12,000" based upon Progressive's estimate of its value. Specifically, a "Market Survey Report" prepared by J.D. Power McGraw Hill Financial for Progressive determined that the market value of the vehicle was $12,086.62. After deducting Appellee's deductible of $999, Progressive issued a payment of $11,087.62.

As noted previously, Appellant asserted at trial that Appellee was overcompensated for his theft loss because he received over $15,000 in insurance payments for a vehicle worth approximately $12,000. In advancing this argument, Appellant is claiming credit for the payment of $11,087.62 from Progressive. On appeal, Appellee asserts that, under the collateral source rule, Appellant is not entitled to a credit for the payment from Progressive. We agree.

"The collateral source rule bars a wrongdoer from offsetting his liability by insurance benefits independently procured by the injured party." *Mid–Century Ins. Co. of Tex. v. Kidd*, 997 S.W.2d 265, 274 (Tex. 1999); *see Sky View at Las Palmas, LLC v. Mendez*, 555 S.W.3d 101, 114 (Tex. 2018). The theory behind the rule is that "a wrongdoer should not have the benefit of insurance independently procured by the injured party, and to which the wrongdoer was not privy." *Brown v. Am. Transfer & Storage Co.*, 601 S.W.2d 931, 934 (Tex. 1980). If a payment is within the collateral source rule, "the principle forbidding more than one recovery for the same loss is not applicable." *Mendez*, 555 S.W.3d at 114 (quoting *Brown*, 601 S.W.2d at 936)).

13

The $11,087.62 payment from Progressive falls under the collateral source rule because Appellee independently contracted with Progressive for insurance on his vehicle and Appellant was not in privity to the insurance policy. Accordingly, Appellant was not entitled to an offset from the fair market value of the vehicle for the payment from Progressive. Appellant asserted that the vehicle had a fair market value of approximately $12,000. Giving Appellant credit for the $3,968.87 paid by Affirmative, there is a remaining balance of approximately $8,000.

Appellant also asserts that he is entitled to an offset for the five payments of $494 to Appellee. However, Jones and Appellee testified that these payments were made in exchange for allowing Jones to drive Appellee's vehicle during those five months. Thus, a reasonable factfinder could find that these payments were made for the use of the vehicle during that time—not as payments made by Appellant for the damages arising out of the theft of the vehicle.

Therefore, the evidence in the record supports a conclusion that Appellee's vehicle had a market value of approximately $12,000 before it was totaled as a result of the theft and damage caused by Appellant. If an offset for the Affirmative Insurance Company payment of $3,968.87 is applied, there is sufficient evidence to support the trial court's award of $6,634.13 in actual damages resulting from the theft. *See* CIV. PRAC. & REM. § 134.005(a). Accordingly, we overrule Appellant's legal sufficiency challenge to the trial court's award of damages to Appellee under the TTLA.

After considering all of the evidence, we also conclude that the trial court's liability and damage findings in favor of Appellee are supported by factually sufficient evidence. Appellee denied agreeing to sell his car to Appellant, writing or signing the document purporting to sell his vehicle to Appellant, and receiving a

$10,000 cash payment from Appellant. Further, Jones admitted that she wrote the document and forged Appellee's signature—without Appellee's knowledge or consent. After Appellant took the vehicle from Jones's house, he took measures to secure it so that Jones and Appellee could not access it. Appellant testified that he prevented Jones and Appellee from taking the vehicle from Appellant's residence on multiple occasions, some of which included police intervention, before Jones successfully reclaimed the vehicle. Thus, the evidence is not so weak as to render the trial court's award of a recovery to Appellee under the TTLA to be unfair or unjust. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). We overrule Appellant's first issue.

In his third issue, Appellant challenges the factual sufficiency of the evidence supporting the trial court's failure to award a recovery to him on any of his claims. When a party attacks the factual sufficiency of an adverse finding on an issue on which he has the burden of proof, he must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chemical*, 46 S.W.3d at 242.

Appellant first argues that he was entitled to a mechanic's lien for the repairs he performed on the vehicle pursuant to Section 70.001 of the Texas Property Code. *See* PROP. § 70.001. However, as discussed above with regard to his first issue, Appellant's claim for a mechanic's lien fails because there is legally insufficient evidence that Appellee authorized the paint services performed by Appellant. *See Drake Ins. Co.*, 606 S.W.2d at 818.

Appellant next asserts that there was factually sufficient evidence that Appellee committed a breach of an oral or written contract. As we discussed with respect to Appellant's second issue, we conclude that there is factually sufficient

15

evidence supporting the trial court's determination that the alleged written contract upon which Appellant relies—the document purporting to sell Appellee's vehicle to Appellant—was forged. This finding defeats Appellant's claim for breach of a written contract. However, Appellant also argues in his third issue that the trial court's refusal to find the existence of an oral contract is against the great weight and preponderance of the evidence.

In most cases, courts have held that the elements of proof are the same for oral contracts as for written contracts. *Turner v. NJN Cotton Co.*, 485 S.W.3d 513, 521 (Tex. App.—Eastland 2015, pet. denied). Parties form a binding contract when the following elements are present: (1) an offer, (2) an acceptance in strict compliance with the terms of the offer, (3) meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. *See Prime Products, Inc. v. S.S.I. Plastics, Inc.*, 97 S.W.3d 631, 636 (Tex. App.—Houston [1st Dist.] 2002, pet. denied).

Jones and Appellee both testified that Appellee never offered or agreed to sell his vehicle to Appellant. Jones and Appellee testified that the only offer by Appellee regarding the vehicle was for Jones to have temporary possession of the vehicle in exchange for monthly payments of $494. We conclude that the trial court's finding that Appellee did not breach an oral contract is not against the great weight and preponderance of the evidence. *See Dow Chem. Co.*, 46 S.W.3d at 242. We overrule Appellant's third issue on appeal.

In his fourth issue, Appellant challenges the trial court's award of attorney's fees in favor of Appellee as well as its failure to award attorney's fees in favor of Appellant. We review a trial court's award of attorney's fees for an abuse of discretion. *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 761 (Tex. 2012). A trial

court abuses its discretion when it acts arbitrarily, unreasonably, or without regard to guiding legal principles. *Ford Motor Co. v. Garcia*, 363 S.W.3d 573, 578 (Tex. 2012). We presume that the trial court acted within the bounds of its discretion unless the record shows the contrary. *See Sanchez v. AmeriCredit Fin. Servs., Inc.*, 308 S.W.3d 521, 526 (Tex. App.—Dallas 2010, no pet.).

We first address Appellant's argument that the trial court abused its discretion by not awarding him attorney's fees under Section 38.001 of the Texas Civil Practice and Remedies Code because Appellant asserted claims for rendered services, performed labor, furnished material, and an oral or written contract. "As a general rule, litigants in Texas are responsible for their own attorney's fees and expenses in litigation." *Ashford Partners, Ltd. v. ECO Res., Inc.*, 401 S.W.3d 35, 41 (Tex. 2012); *see Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, No. 16-0006, 2019 WL 1873428, at \*8 (Tex. Apr. 26, 2019). A court may award attorney's fees only when authorized by statute or by the parties' contract. *MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 669 (Tex. 2009). Whether a party is entitled to seek an award of attorney's fees is a question of law that we review de novo. *Holland v. Wal–Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex. 1999).

The Civil Practice and Remedies Code provides that "[a] person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs" for specific types of claims. CIV. PRAC. & REM. § 38.001 (West 2015). These claims include those for rendered services, performed labor, furnished material, and an oral or written contract. *Id.* To obtain an award of attorney's fees under Section 38.001, "a party must (1) prevail on a cause of action for which attorney's fees are recoverable, and (2) recover damages." *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997).

17

Appellant asserts that he is entitled to recover attorney's fees because he asserted claims under Section 38.001 and those fees were reasonable and necessary. *See* Civ. Prac. & Rem. § 38.001. However, Appellant did not prevail on any of his causes of action, and he did not recover any damages. *See Green Int'l, Inc.*, 951 S.W.2d at 390. Therefore, Appellant could not obtain an award of attorney's fees under Section 38.001. *See id.* Accordingly, the trial court did not abuse its discretion in refusing to award attorney's fees to Appellant.

We next address Appellant's argument that there is legally and factually insufficient evidence to support the award of attorney's fees to Appellee. The TTLA provides that "[e]ach person who prevails in a suit under this chapter shall be awarded court costs and reasonable and necessary attorney's fees." Civ. Prac. & Rem. § 134.005(b). The award of fees to a prevailing party in a TTLA action is mandatory. *See Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998) ("Statutes providing that a party 'may recover,' 'shall be awarded,' or 'is entitled to' attorney fees are not discretionary.").

"When a claimant wishes to obtain attorney's fees from the opposing party, the claimant must prove that the requested fees are both reasonable and necessary." *Rohrmoos Venture*, 2019 WL 1873428, at \*12. "Both elements are questions of fact to be determined by the fact finder and act as limits on the amount of fees that a prevailing party can shift to the non-prevailing party." *Id.* We review the amount awarded for attorney's fees for legal and factual sufficiency. *See Bocquet*, 972 S.W.2d at 21.

The issue of the reasonableness and necessity of attorney's fees requires expert testimony. *Woodhaven Partners, Ltd. v. Shamoun & Norman, L.L.P.*, 422 S.W.3d 821, 830 (Tex. App.—Dallas 2014, no pet.); *see Rohrmoos Venture*, 2019

WL 1873428, at *13 ("Historically, claimants have proven reasonableness and necessity of attorney's fees through an expert's testimony—often the very attorney seeking the award—who provided a basic opinion as to the requested attorney's fees."). Appellee's attorney did not testify at trial, and Appellee presented no other expert testimony as to attorney's fees. The only evidence presented was Appellee's own testimony that he hired two attorneys to handle his case, paying the first one $5,500 and his current attorney $3,500. As recently noted by the Texas Supreme Court in *Rohrmoos Venture*:

> [O]nly fees reasonable and necessary for the legal representation will be shifted to the non-prevailing party, and not necessarily the amount contracted for between the prevailing party and its attorney, as a client's agreement to a certain fee arrangement or obligation to pay a particular amount does not necessarily establish that fee as reasonable and necessary.

2019 WL 1873428, at *11.

The trial court found that the $9,000 in attorney's fees incurred by Appellee were reasonable and necessary. In the absence of evidence that these fees were reasonable and necessary, Appellee asserts that the trial court was permitted to take judicial notice of the amount of reasonable attorney's fees under Section 38.004 of the Texas Civil Practices and Remedies Code. *See* CIV. PRAC. & REM. § 38.004. We addressed a similar contention in *Scott v. Spalding*, No. 11-07-00264-CV, 2009 WL 223459, at *5 (Tex. App.—Eastland Jan. 30, 2009, no pet.) (mem. op.).

As we noted in *Scott*, Section 38.003 creates a rebuttable presumption that the usual and customary attorney's fees for a claim of the type described in Section 38.001 are reasonable. *Scott*, 2009 WL 223459, at *5; *see* CIV. PRAC. & REM. §§ 38.001, .003. Section 38.001 provides that reasonable attorney's fees may be recovered if the claim is for the following: (1) rendered services; (2) performed

labor; (3) furnished material; (4) freight or express overcharges; (5) lost or damaged freight or express; (6) killed or injured stock; (7) a sworn account; or (8) an oral or written contract. Section 38.004 allows the court to take judicial notice of the usual and customary attorney's fees in a bench trial for a claim described in Section 38.001. *Scott*, 2009 WL 223459, at *5.

We held in *Scott* that "unless the claim is one set forth in Section 38.001, the court may not take judicial notice that the usual and customary fees are reasonable but, rather, the party must offer legally and factually sufficient evidence on the issue." *Id.* *Scott* involved a claim under the Texas Deceptive Trade Practices Act (DTPA). *Id.* Because the trial court's judgment in *Scott* was based upon a violation of the DTPA, it was not a case described in Section 38.001. We concluded in *Scott* that the trial court abused its discretion when it awarded attorney's fees based only on judicial notice under Sections 38.003 and 38.004. *Id.*

Appellee's recovery against Appellant is not under Section 38.001, but rather it is under the TTLA. As was the case in *Scott*, the trial court abused its discretion by basing its award of attorney's fees to Appellee on judicial notice under Sections 38.003 and 38.004. *Id.*; *see, e.g.*, *Charette v. Fitzgerald*, 213 S.W.3d 505, 514–15 (Tex. App.—Houston [14th Dist.] 2006, no pet.); *Hasty Inc. v. Inwood Buckhorn Joint Venture*, 908 S.W.2d 494, 502 (Tex. App.—Dallas 1995, writ denied); *Leggett v. Brinson*, 817 S.W.2d 154, 157 (Tex. App.—El Paso 1991, no writ). Appellant's fourth issue is sustained in part insofar as it pertains to Appellee's recovery of attorney's fees. The remainder of Appellant's fourth issue challenging the denial of his request for his own attorney's fees is overruled.

As was the case in *Scott*, the mandatory nature of attorney's fees under the TTLA presents a unique situation. *Scott*, 2009 WL 223459, at *6. Normally, when

we find that there is no evidence to support a finding, the remedy is to reverse and render on the point. But since an award of attorney's fees under the TTLA is mandatory, the proper action is to remand the issue of attorney's fees to the trial court for a determination of the reasonable and necessary attorney's fees to be awarded. *Id.* Accordingly, this cause is remanded to the trial court for a determination of Appellee's attorney's fees in accordance with this opinion.

### *This Court's Ruling*

The judgment of the trial court is reversed with respect to its award of Appellee's attorney's fees, and the cause is remanded to the trial court for a proper assessment of those fees. Otherwise, the judgment of the trial court is affirmed.


JOHN M. BAILEY
CHIEF JUSTICE


May 9, 2019

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[3]

Willson, J., not participating.

---

[3]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.