

# NUMBER 13-19-00382-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**FRANK THOMAS SHUMATE JR.
D/B/A F.T.S. TRUCKING,**                                           **Appellant,**

**v.**

**BERRY CONTRACTING, L.P.
D/B/A BAY, LTD.,**                                                  **Appellee.**

---

### On appeal from the 94th District Court
### of Nueces County, Texas.

---

## MEMORANDUM OPINION

### Before Justices Longoria, Hinojosa, and Tijerina
### Memorandum Opinion by Justice Hinojosa

Appellee Berry Contracting, L.P. d/b/a Bay, Ltd. (Bay) sued appellant Frank

Thomas Shumate Jr. d/b/a F.T.S. Trucking (Shumate) alleging a claim under the Texas

Theft Liability Act and claims for conversion and fraud, among others. A jury found in favor

of Bay, and Bay elected to recover on its Theft Liability Act claim. The trial court signed a final judgment awarding Bay $871,090.47 in actual damages, $4,480,452.35 in punitive damages, pre-judgment and post-judgment interest, and attorney's fees. In five issues, Shumate argues that: (1) Bay's claims are barred by limitations; (2) Shumate is entitled to a settlement credit; (3) the trial court erred in awarding punitive damages; (4) there is legally and factually insufficient evidence supporting the jury's findings; and (5) the trial court erred in awarding attorney's fees. We affirm.

## I.   BACKGROUND

Bay sued Shumate in March 2012 for injuries allegedly discovered in 2011. In its live pleading, Bay alleged that Shumate, in conspiracy with Bay employees, provided Bay's truck hauling services to third parties without compensating Bay. Bay further alleged that Shumate utilized Bay's services, materials, equipment, and supplies to improve Shumate's real property. Bay alleged that in many cases Shumate received payment from third parties for services provided by Bay.

At trial, Kevin Stone, Bay's former trucking division manager and current vice president of Bay's highway, trucking, and materials division, testified regarding Bay's discovery of Shumate's purported misdeeds. In September 2011, Stone replaced Bay's former trucking division manager Michael Mendietta, who had been recently terminated and was later hired by Shumate. At the time of Stone's promotion, he learned of new road construction using recycled asphalt from a Bay facility on a ranch outside of Ben Bolt, Texas. Stone investigated and learned that each load of materials was accounted for, "but there was never an invoice generated nor a check paid to Bay for that material and

2

the trucking services." Stone looked for the records in the billing office but could find none. As a result of this discrepancy, Stone investigated further.

Stone discovered several billing discrepancies. He explained that dispatchers provide work orders and scale tickets[1] to Bay's billing department to determine who to bill and for how much. As an example, Stone identified a Bay work order showing that Shumate requested delivery of materials to "Texas Lehigh in Buda, Texas from the Port of Corpus Christi." The order involved 119 loads of coal weighing 459.94 tons. Stone testified that Bay's billing department never received the work order. Stone later identified other transactions for which Bay was not paid. Stone's investigation revealed that Shumate ordered Bay materials and trucks, which Shumate then used for third parties such as Texas Lehigh, Alamo Cement, and Crushed Concrete. Stone testified that Bay was not paid for any of these orders. Bay learned that Texas Lehigh and Quality Readymix paid Shumate directly for services provided by Bay. Stone also identified instances in which Shumate used Bay's services to improve Shumate's residence and Shumate's relative's residence. Stone indicated that Shumate ordered Bay's services without compensation through the cooperation of Mendietta.

Stone read to the jury portions of Bay's previously admitted Exhibit 46, a joint statement by Edward Barrera and A.C. Cuellar Jr. of Quality Readymix. According to the statement, Mendietta told Barrera and Cuellar that Mendietta, Shumate, and a third person split the money that was paid by Quality Readymix for Bay's services. Mendietta also told them that he threw away the "trucking tickets" for the job.

---

[1] According to Stone, scale tickets identify the truck being used, the commodity, the weight of the haul, and the location and date of the pickup and delivery.

Stone calculated that the value of materials and services that Shumate misappropriated totaled $896,090.47 for thirteen separate work orders. The calculations were based on the number of hours for a particular haul, the industry standard hauling rate for the time, and the total tonnage.

Juan Sotelo, Bay's payroll manager and previous internal auditor, testified that he assisted in investigating discrepancies in Bay's billing records for services involving Shumate. Sotelo stated that he was unable to find many of the records relating to the Shumate orders. Sotelo suspected that the records were destroyed at Mendietta's direction when Bay's trucks transported trucking division records to a gravel pit. Sotelo stated that Bay tracked down records from third parties indicating that Shumate was paid for jobs utilizing Bay's trucks and materials. Sotelo identified multiple such cases. He stated that Shumate ordered the work in each instance.

Susie Sullivan, Bay's vice president and director of internal audit, was also involved in investigating Bay's billing discrepancies. Sullivan stated that Bay's process with respect to accounting and billing failed when it came to the Shumate transactions because Bay "had a person of high authority . . . that went around the controls that were in place[.]" When asked who that person was, Sullivan identified Mendietta. Sullivan maintained that Mendietta's actions benefitted Shumate and Mendietta.

David Gonzalez, a trucking dispatcher for Bay, testified that when Mendietta was Bay's trucking division manager he would order trucks for Shumate. Gonzalez also stated that Shumate would sometimes order trucks directly from Bay. Gonzalez was shown an April 16, 2011 work order, and he explained that the order involved two trucks transporting

4

boxes of trucking division records to a gravel pit.

Another Bay dispatcher, Jose Caudillo, similarly testified that Bay often provided truck hauling services for Shumate and that both Mendietta and Shumate would request such services. Gerard Guzman, a Bay foreman, testified that Mendietta instructed him to haul two truckloads of trucking division documents to a gravel pit and cover them with dirt. This occurred in April 2011. Guzman also testified that he and other Bay employees performed work at Shumate's ranch in Karnes City.

Edward Barrera works for Quality Readymix, a concrete delivery company. Barrera testified that Bay presented him with a demand for payment in November 2011 for services Bay performed. Barrera investigated the matter and discovered that Quality Readymix paid Shumate $87,507.10 for the services. Through Barrera's testimony, Bay introduced the checks and invoices detailing those transactions. Barrera testified that for these particular jobs, he requested hauling services from Bay, not Shumate. After investigating the matter, Barrera realized that Quality Readymix paid the wrong entity, and he provided the relevant records to Bay. According to Barrera, he then sent a demand letter to Shumate requesting return of the payments. The demand letter reads in relevant part as follows:

> I'm enclosing copies of invoices supporting requests to Quality Readymix, (herein Quality Readymix) for payment to FTS Trucking for hauling materials to Quality Readymix's batch plants on McBride Lane and Jurica Road between 2006 to 2009. These invoices total $87,507.10. Quality Readymix believes that monies paid to FTS Trucking re these invoices were paid in error, as the invoices in question are supported by weight tickets showing that Bay Limited provided the hauling in question.

Barrera stated that Shumate never responded to the demand.

5

Shumate testified that he ran a sole proprietorship trucking business in Nueces County from the early 1990's through 2012 under the assumed name FTS Trucking. Shumate stated that he formed a friendship with Dennis Berry, Bay's vice president and part-owner. According to Shumate, he began providing trucking services for Bay. Shumate stated his initial point of contact for these services was Berry. Later, Shumate would negotiate the price for services with Mendietta. Shumate stated that he provided hauling services to Bay from the mid 1990's through 2011. According to Shumate, after ten years of doing business, he would not always have enough trucks for contracted jobs. Therefore, he started using Bay's trucks to provide services for Shumate's customers.

Shumate could not recall whether Bay ever received payment for the use of its trucks. Shumate also claimed that he never paid Bay because Bay always owed him money. Shumate claimed that he kept no records for trucking services that he provides or for money that Bay owed to him. Shumate maintained Bay owed him $378,280 for use of certain vehicles in highway construction jobs. He stated there was no written agreement regarding this arrangement and that he has never invoiced Bay. Shumate also claimed that he paid the Nueces County Livestock Show $47,500 and that he expected reimbursement from Bay. Shumate stated that Bay owed him money for various other expenditures.

Shumate stopped doing business with Bay after Bay terminated Mendietta in 2011. Shumate stated that Mendietta currently works for an "oil field industry" company he partly owns.

Dennis Berry testified that he never entered into any agreement with Shumate

6

which permitted Shumate to use Bay's trucks for Shumate's sole benefit. Berry also denied reaching any agreement with Shumate concerning Shumate's claims that Bay owed Shumate for various services and materials.

The case was submitted to the jury on an agreed charge. The jury found in favor of Bay on each of its claims and assessed actual damages in the amount of $896,090.47. The jury also found that Bay was entitled to $4,480,452.35 in punitive damages and $392,253.60 in attorney's fees plus conditional appellate attorney's fees. The jury also found in favor of Bay on Shumate's claims seeking an offset to Bay's damages. Bay elected to recover on its Theft Liability Act claim. The trial court signed a final judgment awarding $871,090.47 in actual damages, which incorporated a $25,000 credit for a payment Shumate previously made to Bay. In all other respects, the judgment was in accordance with the jury's findings on damages and attorney's fees.

Shumate filed a motion for new trial and to reform the judgment, which the trial court denied following a hearing.[2] This appeal followed.

## II. LIMITATIONS

In his first issue, Shumate argues that we should render judgment in his favor on Bay's claims because they are barred by the applicable statute of limitations. Bay responds that Shumate waived this issue because Shumate did not request a jury question on his limitations defense.

"Upon appeal all independent grounds of recovery or of defense not conclusively established under the evidence and no element of which is submitted or requested are

---

[2] Shumate makes various complaints throughout his brief about the trial court's evidentiary rulings during this hearing, but he brings no separate issue alleging reversible error in this regard.

waived." TEX. R. CIV. P. 279. Because limitations is an affirmative defense, Shumate had the burden to "plead, prove, and secure findings to sustain [his] plea of limitations." *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517 (Tex. 1988). Further, an argument that an affirmative defense was conclusively established by the evidence must be separately preserved by a motion for instructed verdict, a motion for judgment notwithstanding the verdict, objection to the submission of a question to the jury, a motion to disregard the jury's answer to a vital fact question, or a motion for new trial. *Garden Ridge, L.P. v. Clear Lake Ctr., L.P.*, 504 S.W.3d 428, 435 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

Shumate did not object to the charge's omission of a limitations question, and he failed to urge that the defense was conclusively established in the trial court.[3] Therefore, he waived this issue. *See* TEX. R. CIV. P. 279; *see also In re Lopez*, No. 10-18-00278-CV, 2021 WL 2252138, at *4 n.2 (Tex. App.—Waco May 21, 2021, no pet. h.) (mem. op.) (concluding that limitations argument was waived where appellant did not request and obtain a jury answer on the defense); *Pitts & Collard, L.L.P. v. Schechter*, 369 S.W.3d 301, 325 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (same); *Roberts v. Holmes*, 412 S.W.2d 947, 949 (Tex. App.—Eastland 1966, no writ) (same). We overrule Shumate's first issue.

## III.    ONE SATISFACTION RULE

In his second issue, Shumate argues that the trial court erred in declining to apply a judgment credit pursuant to the one satisfaction rule. Specifically, Shumate contends that he is entitled to a credit in the amount of $1.9 million based on Bay's prior judgment

---

[3] We note that Shumate did not dispute at trial Bay's assertion that it discovered its injury in late 2011.

8

against Mendietta as well as a forbearance agreement between Bay and Mendietta.[4]

## A.     Pertinent Facts

In support of his post-judgment motions, Shumate attached documents from a separate cause styled, *Bay, Ltd. v. Michael Rene Mendietta a/k/a Michael Mendietta*, Cause No. 2012-DCV-4205-H, 347th District Court, Nueces County, Texas. Those documents included Bay's petition, the trial court's final judgment, and a forbearance agreement. In its motion for new trial, Shumate argued that the trial court must render a take nothing judgment in his favor because the Mendietta judgment awarded $1.9 million in damages which exceeds the award of actual damages in this case. Shumate argued that the Mendietta suit "involved the same claims and the same damages as this case." Shumate urged the same arguments in his motion to modify the judgment.

In its response to these motions, Bay argued that Shumate failed to meet its burden to show its entitlement to a judgment credit. Bay further argued that the one satisfaction rule did not apply because Bay has only received satisfaction for claims unrelated to the present case. Bay presented evidence that it previously received $14,250 in payments from Mendietta pursuant to the forbearance agreement which covered a portion of the

---

[4] Shumate also cites to § 33.012 of the civil practice and remedies code, which provides that "[i]f the claimant has settled with one or more persons, the court shall further reduce the amount of damages to be recovered by the claimant with respect to a cause of action by the sum of the dollar amounts of all settlements." TEX. CIV. PRAC. & REM. CODE ANN. § 33.012(b). Chapter 33 is based on the common law one-satisfaction rule, but it is more narrowly applied. *See In re Xerox Corp.*, 555 S.W.3d 518, 523 (Tex. 2018) (orig. proceeding) (explaining that "chapter 33's proportionate-responsibility scheme . . . incorporates the one-satisfaction rule"); *Virlar v. Puente*, 613 S.W.3d 652, 685–86 (Tex. App.—San Antonio 2020, pet. filed). In particular, chapter 33 applies only to actions where a defendant, settling person, or responsible third party is found responsible for a percentage of the harm for which relief is sought. *See id.* § 33.002(a). Here, there was no proportionate responsibility question in the jury charge nor was there any finding that Mendietta was responsible for a percentage of the harm for which Bay sought relief. *See White v. Zhou Pei*, 452 S.W.3d 527, 544 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *see also Nelson v. Pasol*, No. 13-15-00379-CV, 2017 WL 3634059, at *5 (Tex. App.—Corpus Christi–Edinburg Aug. 24, 2017, no pet.) (mem. op.). Therefore, § 33.012 is inapplicable, and we limit our analysis to the common law rule.

judgment interest but had not reduced the principal amount owed on the judgment. Bay maintained that these payments related to "injuries inflicted by Mendietta alone, for his own personal gain to his real property and to the benefit of no one else."

The Mendietta judgment identifies twenty-three separate injuries, only seven of which are common to the present case. The Mendietta judgment grants Bay a constructive trust and constitutional lien on Mendietta's homestead. The judgment recites that "$175,000.00 of the $1,900,000.00 owed on the Final Judgment" relates to this property.

The forbearance agreement requires Mendietta to pay $750 per month toward satisfaction of the judgment. In turn, Bay agrees to forgo executing on its constructive trust and constitutional lien. The agreement provides that Mendietta's payments will be applied to the amounts owed on the constructive trust and constitutional lien. Bay further agrees that it will not take further efforts to collect on its judgment as long as Mendietta complies with his obligations.

Bay presented the affidavit testimony of its attorney, Denny Barre, in support of its response. Barre testified that Mendietta has paid $14,250 toward satisfaction of the Mendietta judgment. Barre stated that these payments were allocated to the satisfaction of the $175,000 owed on Bay's claim concerning Mendietta's homestead. Barre maintained that Bay had received no other payments toward the Mendietta judgment.

B.      **Standard of Review & Applicable Law.**

Under the one satisfaction rule, a plaintiff is entitled to only one recovery for any damages suffered. *Sky View at Las Palmas, LLC v. Mendez*, 555 S.W.3d 101, 106 (Tex.

10

2018). The rule applies when multiple defendants commit the same acts, or when multiple defendants commit technically different acts that result in a single injury. *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 390 (Tex. 2000). The fundamental consideration in applying the one satisfaction rule is whether the plaintiff has suffered a single, indivisible injury—not the causes of action the plaintiff asserts. *Sky View*, 555 S.W.3d. at 107. "A nonsettling defendant seeking a settlement credit under the one-satisfaction rule has the burden to prove its right to such a credit." *Id*. A nonsettling defendant can meet its burden by introducing the settlement agreement or some other evidence of the settlement amount. *Id*. If the nonsettling defendant demonstrates a right to a settlement credit, then the burden shifts to the plaintiff to show that the judgment should not be credited because of the settlement agreement's allocation. *Id*. The plaintiff can meet its burden by presenting evidence showing "that entering judgment on the jury's award would not provide for the plaintiff's double recovery." *Id*. at 107–08. We review the trial court's application of the one satisfaction rule de novo. *Id*. at 108.

## C.    Analysis

First, contrary to Shumate's contention, there is no evidence of a $1.9 million *settlement* agreement between Mendietta and Bay. Rather, Shumate presented evidence of a $1.9 million judgment against Mendietta which partially concerns the same injuries in the underlying suit. The agreement at issue provides only that Mendietta would pay $750 per month to Bay so that Bay would forgo executing on its constructive trust and constitutional lien. Shumate presented no evidence that the Mendietta judgment was satisfied or that any partial satisfaction of the judgment related to an indivisible injury.

11

It is well settled that an unsatisfied judgment recovered against one joint tortfeasor will not operate as a bar to an action against another; provided however, the plaintiff may finally *satisfy* only one judgment. *Krobar Drilling, L.L.C. v. Ormiston*, 426 S.W.3d 107, 112 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). In other words, "it is the satisfaction of a judgment, not the obtaining of a judgment, that bars further suits." *Id*.; *see Burchfield v. Prosperity Bank,* 408 S.W.3d 542, 548–49 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (holding that the one-satisfaction and double-recovery rules were inapplicable to a judgment obtained by a bank against a guarantor for deficiency on a note because the default judgment rendered against the other guarantor had gone uncollected); *see also Daryapayma v. Park*, No. 02-15-00159-CV, 2016 WL 6519117, at *2 (Tex. App.—Fort Worth Nov. 3, 2016, no pet.) (mem. op.) ("[T]he one-satisfaction rule does not bar a trial court from rendering a judgment against one party when another judgment rendered against a different party for the same injury or damages has gone unsatisfied.").

The evidentiary record before the trial court established that Bay received only $14,250 toward satisfaction of the Mendietta judgment and that those payments were allocated to an injury unrelated to the present suit. Because Shumate failed to establish that Bay received satisfaction for a single, indivisible injury, he failed to carry his burden. Therefore, we conclude that the trial court did not err in denying Shumate a judgment credit. *See Sky View*, 555 S.W.3d at 108; *see also Daryapayma,* 2016 WL 6519117, at *3 ("[I]n the absence of any actual payment or satisfaction, the mere existence of the default judgments was no bar to the final judgments rendered against [appellants]."). We overrule Shumate's second issue.

12

## IV.    PUNITIVE DAMAGES

In his third issue, Shumate argues that the trial court erred in awarding punitive damages. Specifically, Shumate argues that the jury's answer to Question 11 of the jury charge did not specify which tort supports a punitive damages award.[5] Shumate further argues that Question 12 erroneously instructed the jury to consider attorney's fees when calculating the punitive damages award.[6] Finally Shumate argues that the punitive damages award is unconstitutionally excessive.[7]

### A.    Preservation

As a threshold matter, we note that Shumate's arguments concerning the jury charge are unpreserved. "A party objecting to a charge must point out distinctly the objectionable matter and the grounds of the objection. Any complaint as to a question, definition, or instruction, on account of any defect, omission, or fault in pleading, is waived unless specifically included in the objections." TEX. R. CIV. P. 274. An objection does not satisfy Rule 274's requirements unless the grounds for the objection are stated specifically enough so that the trial court is fully cognizant of the grounds of complaint and deliberately chose to overrule the objection. *Cont'l Cas. Co. v. Baker*, 355 S.W.3d 375, 383 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *see also* TEX. R. APP. P. 33.1(a).

---

[5] Question 11 asks, "Do you find by clear and convincing evidence that the harm to Bay, Ltd. resulted from theft, malice, conversion, civil conspiracy, aiding and abetting, or fraud?"

[6] Question 12 instructed the jury to consider "Attorney's fees and litigation expenses" among other factors in awarding punitive damages.

[7] Shumate also argues within this issue that the punitive damages should be capped because there is legally and factually insufficient evidence to support the jury's finding of civil theft. We will incorporate this argument into our analysis of issue four which raises additional sufficiency of the evidence arguments.

13

As noted above, Shumate agreed to the jury charge and lodged no objections. As a result, Shumate has not preserved these complaints for appellate review. *See Richard Rosen, Inc. v. Mendivil*, 225 S.W.3d 181, 197 n.5 (Tex. App.—El Paso 2005, pet. denied) (concluding that appellant failed to preserve jury charge error relating to punitive damages question). Further, to the extent Shumate contends that the charge error constitutes fundamental error,[8] he waived this contention by failing to provide supporting argument or authority. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.").

## B.      Excessive Award

We next address Shumate's contention that the punitive damage award is unconstitutionally excessive.

### 1.      Standard of Review & Applicable Law

"The Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003). While punitive damages further the State's interest in punishing and deterring unlawful conduct, such punishment must not be so excessive as to constitute an arbitrary deprivation of property. *Bennett v. Grant*, 525 S.W.3d 642, 650 (Tex. 2017). Therefore, when the Texas cap on punitive damages is inapplicable, as in this case,[9] there remains a federal constitutional check on the award.

---

[8] "Except for fundamental error, appellate courts are not authorized to consider issues not properly raised by the parties." *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 577 (Tex. 2006).

[9] Section 41.008 of the Texas Civil Practice and Remedies Code limits the award of punitive

*Id*. We consider three guideposts when reviewing whether a punitive damages award is unconstitutionally excessive: (1) the degree of reprehensibility of the misconduct; (2) the disparity between the punitive damages and the actual harm suffered by the plaintiff or the harm likely to result; and (3) the difference between the punitive damages and the civil or criminal penalties that could be imposed for comparable conduct. *Id*. We review the constitutionality of a punitive damages award de novo. *Id*.

### 2.      Analysis

#### a.      Reprehensibility

"The degree of reprehensibility of a defendant's conduct is 'the most important indicium of the reasonableness of a punitive damages award.'" *Horizon Health Corp. v. Acadia Healthcare Co.*, 520 S.W.3d 848, 875 (Tex. 2017) (quoting *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996)). The reprehensibility guidepost involves consideration of five non-exclusive factors: whether (1) the harm inflicted was physical rather than economic; (2) the tortious conduct showed an indifference to or reckless disregard for the health or safety of others; (3) the target of the conduct had financial vulnerability; (4) the conduct involved repeated actions; and (5) the harm resulted from intentional malice, trickery, or deceit. *Id*. Further, "a reprehensibility analysis can . . . consider, to some extent, surrounding circumstances beyond the underlying tort." *Bennett v. Reynolds*, 315

---

damages to the greater of $200,000 or "two times the amount of economic damages" plus "an amount equal to any noneconomic damages found by the jury, not to exceed $750,000." Tex. Civ. Prac. & Rem. Code Ann. § 41.008(b). This cap does not apply where a plaintiff seeks recovery based on certain felonious conduct, including theft punishable as a third-degree felony or higher. *Id*. § 41.008(c)(13). Although Shumate challenges the sufficiency of the evidence supporting the jury's theft finding, he does not dispute that such a finding supports an uncapped punitive damages award. *See* Tex. Penal Code Ann. §§ 31.03(e)(7), 31.04(e)(7).

15

S.W.3d 867, 875 (Tex. 2010). "One factor alone may not be sufficient to sustain an exemplary damages award on appeal, and the absence of all of them renders an exemplary damages award suspect." *Barnhart v. Morales*, 459 S.W.3d 733, 752 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (citing *Reynolds*, 315 S.W.3d at 874).

Here, the harm caused by Shumate was entirely economic in nature. Further, there is no evidence that Shumate's conduct showed an indifference to the health or safety of others, or that Bay is a financially vulnerable target. Therefore, the first three reprehensibility factors weigh against the exemplary damages award.

However, the fourth and fifth factors clearly weigh in favor of the award. The evidence establishes that Shumate engaged in a years' long scheme of misappropriating Bay's materials and services. His conduct was not limited to a single occurrence or a small period of time. *See Gore*, 517 U.S. at 577 ("[A] recidivist may be punished more severely than a first offender [because] repeated misconduct is more reprehensible than an individual instance of malfeasance."). Further, the evidence establishes that Shumate, acting in concert with Bay's employees, engaged in a purposeful scheme to deceive Bay and procure the use of Bay's services and materials for Shumate's benefit. Shumate's actions, as found by the jury, were clearly the result of intentional trickery or deceit as opposed to accidental behavior. *See Acadia Healthcare*, 520 S.W.3d at 876. We conclude that, on balance, the reprehensibility guidepost supports the award of punitive damages.

### b. Disparity

The United States Supreme Court has "been reluctant to identify concrete constitutional limits on the ratio between harm, or potential harm, to the plaintiff and the

punitive damages award." *Campbell*, 538 U.S. at 424. But it has cautioned that "few awards exceeding a single-digit ratio [or a 9:1 ratio] between punitive and compensatory damages, to a significant degree, will satisfy due process." *Id*. at 425. The Court has further noted that "an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety." *Id*.

We note that Texas courts appear to consider this guidepost in tandem with the reprehensibility factors. For instance, in *Tony Gullo Motors I, L.P. v. Chapa*, the Texas Supreme Court held that a punitive damages award that was 4.33 times the amount of compensatory damages was unconstitutionally excessive where only one of the reprehensibility factors was present. 212 S.W.3d 299, 310 (Tex. 2006). The defendant's conduct in *Chapa* was deceitful, but, unlike this case, it did not involve repeated actions. *Id*. at 308. Further, the Court noted that the punitive damages was seventeen times the amount of economic damages. *Id*. On the other hand, this Court held in *Zorrilla v. AYPCO Const. II, LLC*, that a punitive damages award that was 4.41 times the amount of compensatory damages was not excessive where two reprehensibility factors were present. 421 S.W.3d 54, 71–72 (Tex. App.—Corpus Christi–Edinburg 2013), *aff'd in part, rev'd in part on other grounds*, 469 S.W.3d 143 (Tex. 2015).

Here, the punitive damages award was five times the compensatory damages award, which was entirely composed of economic damages. Given that two of the reprehensibility factors support punitive damages, we are unable to conclude that this ratio is unconstitutionally excessive. *See Reynolds*, 315 S.W.3d at 879 ("[R]igid application of a 4:1 ratio is not universally required."); *see also Sommerfield v. Knasiak*,

17

967 F.3d 617, 623–24 (7th Cir. 2020) (affirming a 5.8:1 ratio of exemplary to actual damages in an employment harassment case because "[n]o legal principle requires the conclusion that this punitive-damages award was excessive relative to the harm that [the defendant] inflicted"); *Pena v. Guerrero*, No. 04-19-00874-CV, 2020 WL 7232136, at *3 (Tex. App.—San Antonio Dec. 9, 2020, no pet.) (mem. op.) (holding that punitive damage ratio of 5.1:1 was not excessive); *Huynh v. Phung*, No. 01-04-00267-CV, 2007 WL 495023, at *12–14 (Tex. App.—Houston [1st Dist.] Feb. 16, 2007, no pet.) (mem. op.) (concluding that 10:1 punitive damages award was excessive but suggesting a remittitur equal to five times actual damages).

### c.      Civil or Criminal Penalties

Under the third guidepost, we must examine the difference between the punitive damages awarded and the civil or criminal penalties that could be imposed for comparable conduct. *Grant*, 525 S.W.3d at 650. Because there are no analogous civil penalties for Shumate's conduct, we must look to potential criminal penalties, while keeping in mind that "criminal penalties are viewed as less instructive than potential civil penalties." *Id*. at 651. The jury found that Shumate committed a theft of services and materials valuing $896,090.47. Such conduct may potentially constitute a first-degree felony theft, *see* Tex. Penal Code Ann. §§ 31.03(e)(7), 31.04(e)(7), which is subject to imprisonment "for life or for any term of not more than 99 years or less than 5 years" as well as "a fine not to exceed $10,000." *See id*. § 12.32. In *Zorrilla*, we noted that the conduct in that case included a possible prison sentence. 421 S.W.3d at 71. We reasoned that this fact supported the punitive damages award because "[t]he loss of one's liberty

18

and a criminal conviction are greater consequences than any monetary penalty." *Id*.; *see Pac. Mut. Life Ins. v. Haslip*, 499 U.S. 1, 23 (1991) (suggesting that although the punitive damages in the case were twenty times greater than the comparable civil fine, the possibility of imprisonment for the comparable criminal violation was a greater concern); *Swinnea v. ERI Consulting Eng'rs, Inc.*, 481 S.W.3d 747, 758 (Tex. App.—Tyler 2016, no pet.) (considering the possible criminal penalty associated with first-degree felony in concluding that the punitive damages award did not violate due process). Given the possible penal consequences in this case, Shumate "was on notice that the State had a substantial interest" in preventing such conduct. *Grant*, 525 S.W.3d at 651. We conclude that this factor weighs in favor of the punitive damages award.

### d. Summary

Because each of the constitutional guideposts weigh in favor of the punitive damages award in this case, we conclude that the award is not unconstitutionally excessive. *See id*. at 650. Having rejected each of Shumate's challenges to the punitive damages award, we overrule his third issue.

## V. SUFFICIENCY OF THE EVIDENCE

In what we treat as his fourth issue, Shumate lodges various challenges to the sufficiency of the evidence. Specifically, Shumate argues that the evidence is legally insufficient to support each tort claim because they are barred by the economic loss rule. Shumate further contends that the jury's award of damages for equitable claims is supported by no evidence. Next, Shumate argues that "[t]he evidence is legally and factually insufficient to support either the tort findings or proximate causation." Finally,

19

Shumate maintains that there is legally insufficient evidence of damages.

In his brief, Shumate does not provide the standard of review for legal and factual sufficiency challenges, much less apply those standards to the facts in this case. Nor does Shumate identify the elements of each specific tort claim for which he contends the evidence is lacking, except for his challenge to causation and damages. Shumate further provides no authority or argument discussing the applicable causation standard and thus fails to explain how the evidence in this case was insufficient to establish causation. *See* TEX. R. APP. P. 38.1(i). Further, Shumate failed to preserve his argument concerning the application of the economic loss rule because he did not raise it in the trial court. *See* TEX. R. APP. P. 33.1; *Equistar Chems., L.P. v. Dresser-Rand Co.*, 240 S.W.3d 864, 868 (Tex. 2007) (concluding that no-evidence objections in the trial court did not preserve error regarding the application of the economic loss rule). Nevertheless, in our sole discretion, we will address Shumate's various contentions arguing that there is no evidence, or legally insufficient evidence, to support the jury's findings. *See Lion Copolymer Holdings, LLC v. Lion Polymers, LLC*, 614 S.W.3d 729, 732 (Tex. 2020) (explaining that briefs must be liberally, but reasonably, construed so that the right to appeal is not lost by waiver). However, we decline to address Shumate's factual sufficiency argument because he fails to weigh evidence supporting the challenged findings against the countervailing evidence, which is necessary to adequately brief such an argument. *See id*.

## A. Standard of Review

Evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex.

2005). We view the evidence in the light most favorable to the challenged finding, indulging every reasonable inference that would support it and disregarding contrary evidence unless a reasonable factfinder could not. *Id*. at 822. Evidence is legally insufficient to support a disputed fact finding when (1) evidence of a vital fact is absent, (2) rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *Id*. at 810.

In the context of a jury trial, the sufficiency of the evidence is reviewed in the light of the charge submitted if no objection is made to the charge. *Green v. Dall. Cnty. Schs*., 537 S.W.3d 501, 506 (Tex. 2017) (per curiam); *Romero v. KPH Consolidation, Inc*., 166 S.W.3d 212, 221 (Tex. 2005); *Wal–Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 715 (Tex. 2001).

## B.    Theft

We first address Shumate's argument that there is legally insufficient evidence supporting Bay's civil theft claim. A person who commits theft is civilly liable under the Act "for the damages resulting from the theft." TEX. CIV. PRAC. & REM. CODE ANN. § 134.003(a). A "person who has sustained damages resulting from theft may recover . . . the amount of actual damages found by the trier of fact and, in addition to actual damages, damages awarded by the trier of fact in a sum not to exceed $1,000." *Id*. § 134.005(a)(1).

The jury was instructed as follows concerning Bay's theft claim:

"Theft" means unlawfully appropriating property or unlawfully obtaining or securing services with intent to deprive the owner of property or services. Appropriation of property is unlawful if: (1) it is without the owner's effective consent; (2) the property is stolen and the actor appropriates the property knowing it was stolen by another.

Appropriation of services is unlawful if the actor: (1) intentionally or knowingly secures performance of services by deception, threat, or false token; or (2) having control over the disposition of services of another to which the actor is not entitled, the actor intentionally or knowingly diverts the other's services to the actor's own benefit or to the benefit of another not entitled to the services.

Shumate primarily argues that there was no evidence that he intended to deceive Bay. Shumate's argument in this regard is based on the assumption that Shumate's procurement of services and materials occurred pursuant to a contractual relationship between the parties. However, Bay's witnesses disclaimed that any such contract existed, and there was certainly no evidence of a contract permitting Shumate to use Bay's services and materials for third parties or for himself without compensating Bay. We must presume that the jury disregarded evidence to the contrary and that it found incredible Shumate's bare assertions that such an arrangement existed. *See City of Keller*, 168 S.W.3d at 827.

Further, as we stated in our review of the punitive damages award, the evidence established that Shumate engaged in a years' long scheme to use Bay's services and materials without compensating Bay. Bay presented evidence that it expected payment for these services and materials, that Shumate acted in concert with Mendietta to keep certain records from being discovered by the billing department, and that Mendietta directed the unusual destruction of Bay's trucking division records shortly before his termination. We conclude that this amounts to more than a scintilla of evidence that

22

Shumate committed a theft as defined in the jury charge. *See id*.; *cf. Merryman v. State*, 391 S.W.3d 261, 272 (Tex. App.—San Antonio 2012, pet. ref'd) (concluding that the evidence was legally sufficient to prove theft by deception when "[t]he evidence shows a series of transactions between Merryman and customers with the same pattern—promising to complete the construction projects in a short time-frame (one to two months), demanding advance payments on a tight weekly schedule regardless of job progress, beginning a minimal amount of work and then stopping and walking off the job, leaving it unfinished after a 'payment dispute' arose, and giving no refund of payments made").

Next, Shumate argues that there is no evidence that Shumate's theft proximately caused Bay's damages. Shumate's argument in this regard is limited to the following: "[N]o evidence shows that any theft Shumate supposedly committed caused Bay any of the 13 items in Bay's damages model."

"The components of proximate cause consist of cause in fact and foreseeability." *Rogers v. Zanetti*, 518 S.W.3d 394, 402 (Tex. 2017) (citing *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Rsch. Corp.*, 299 S.W.3d 106, 122 (Tex. 2009)). Cause in fact requires a showing that the act or omission was a substantial factor in bringing about the injury and without which harm would not have occurred. *Id*. (citing *HMC Hotel Props. II Ltd. P'ship v. Keystone–Tex. Prop. Holding Corp.*, 439 S.W.3d 910, 913 (Tex. 2014)). Foreseeability addresses the proper scope of a defendant's legal responsibility for negligent conduct that in fact caused harm. *Id*. The foreseeability component asks "whether the harm incurred should have been anticipated and whether policy considerations should limit the consequences of a defendant's conduct." *Id*.

23

Bay's damages were based on the value of the services and materials that Shumate misappropriated. The evidence establishes that Bay would have billed Shumate or third parties for such services and materials if not for Shumate's deception. In other words, the non-payment would not have occurred absent Shumate's actions. Such harm is certainly foreseeable in that the very act of theft deprives the victim of the possession of tangible property or the use of services without compensation. We conclude that the evidence would enable reasonable and fair-minded people to find that Shumate's theft proximately caused Bay's damages. *See City of Keller*, 168 S.W.3d at 827.

Finally, Shumate argues that there is legally insufficient evidence of damages "[b]ecause Bay's damages witnesses were unqualified." Specifically, Shumate argues that Sullivan and Stone did not have the requisite degree of expertise to opine on damages. Shumate further argues that their testimony constitutes bare, baseless opinions which constitute no evidence.

We first note that Shumate lodged no objections to Sullivan's and Stone's testimony on the basis of their qualification to render an expert opinion on damages. Sullivan, for instance, was not called by Bay as a witness, but by Shumate. By failing to raise a qualification objection in the trial court, Shumate has not preserved this complaint for appeal. *See* TEX. R. APP. P. 33.1(a); *Adams v. State Farm Mut. Auto. Ins.*, 264 S.W.3d 424, 429 (Tex. App.—Dallas 2008, pet. denied) ("An objection to an expert's qualifications must be raised in the trial court in order to preserve error.").

However, Shumate's complaint that Sullivan's and Stone's testimony constituted no evidence need not be preserved for review. *See City of San Antonio v. Pollock*, 284

24

S.W.3d 809, 816 (Tex. 2009) ("Bare, baseless opinions will not support a judgment even if there is no objection to their admission in evidence."). With respect to damages, Stone identified those jobs for which Bay provided trucking services but received no payment. Stone accomplished this by reviewing Bay's trucking work orders and compared them to scale tickets from third parties. Stone explained that these documents showed the following:

> We had the date that the transaction took place, we had the person that ordered the transaction, we had the location it was coming from and going to, we had the number of hours that the trucks performed on that particular transaction, and we had the total tons that the trucks carried.

Stone testified that he calculated a tonnage rate for these trucking services by considering the number of hours for a particular haul, the then standard hourly rate in the industry, as well as the total tonnage. Bay's Exhibit 101 provides an example of this calculation:

> Coal from Port of CC to Texas Lehigh San Antonio
> Total 2007: 74 loads, 1,619.80 tons, 440.5 hours
> The daily rate in 2007 was $62.50
> 440.50 hrs * $62.50/hr = $27,531.25 = cost to haul the materials
> $27,531.25/1,619.80 tons= $16.9966971/ton
> Rounded to $17/ton

According to Stone, and as demonstrated by Bay's Exhibit 3, he performed a similar calculation for thirteen jobs for which Bay was not paid. Stone testified that he calculated that Bay was entitled to payment of $896,090.47 for this work. Rather than being mere *ipse dixit*, Stone's damage opinion was based on exhaustive documentation quantifying the services that were misappropriated coupled with the industry standard rate for such work. Accordingly, we conclude that Stone's opinion testimony was neither bare nor baseless and constitutes legally sufficient evidence of damages. *See Pollock*, 284 S.W.3d

25

at 816. Based on our resolution of this argument, we need not address Shumate's challenge to Sullivan's testimony. *See* TEX. R. APP. P. 47.1.

We note that Bay elected to recover solely on its theft claim, as that claim supported both its claim for uncapped punitive damages and attorney's fees. Having rejected each of Shumate's legal sufficiency challenges to Bay's theft claim, we need not address his sufficiency arguments pertaining to Bay's remaining claims. *See ACCI Forwarding, Inc. v. Gonzalez Warehouse P'ship*, 341 S.W.3d 58, 68 (Tex. App.—San Antonio 2011, no pet.) ("In cases in which the judgment rests on multiple theories of recovery, an appellate court need not address all causes of action if any one theory is valid."); *see also Air Jireh Serv. Corp. v. Weaver & Jacobs Constructors, Inc.*, No. 13-15-00180-CV, 2019 WL 3023315, at *4 (Tex. App.—Corpus Christi–Edinburg July 11, 2019, no pet.) (mem. op.). We overrule Shumate's fourth issue.

## VI.    ATTORNEY'S FEES

In his fifth issue, Shumate argues that Bay is not entitled to attorney's fees. His primary argument is premised on this Court concluding that the evidence is legally insufficient to establish Bay's theft claim. Because we have rejected this contention, Shumate's argument necessarily fails.

Shumate further complains that Bay failed to segregate attorney's fees for its theft claim. However, Shumate waived this complaint by not urging it in the trial court. *See* TEX. R. APP. P. 33.1(a); *Green Int'l., Inc. v. Solis*, 951 S.W.2d 384, 389 (Tex. 1997); *see also Atkinson v. Sunchase IV Homeowners Ass'n, Inc.*, No. 13-17-00691-CV, 2020 WL 2079093, at *6 (Tex. App.—Corpus Christi–Edinburg Apr. 30, 2020, pet. filed) (mem. op.).

26

Next, Shumate appears to complain about the sufficiency of the evidence supporting the jury's calculation of attorney's fees. His argument in this regard is limited to the following: "Evidence also showed that Bay's multiplication of its hourly rate times the number of hours did not establish a proper lodestar [calculation] as required. The time expended is not a reasonable fee for necessary services relating to Bay's prosecution of the theft claim."

The Texas Supreme Court has instructed that "the lodestar analysis [should] apply to any situation in which an objective calculation of reasonable hours worked times a reasonable rate can be employed." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 498 (Tex. 2019). "[T]the fact finder's starting point for calculating an attorney's fee award is determining the reasonable hours worked multiplied by a reasonable hourly rate, and the fee claimant bears the burden of providing sufficient evidence on both counts." *Id*. The fee applicant at a minimum must present evidence of: (1) the particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services. *Id*. "[T]here is a presumption that the base lodestar calculation, when supported by sufficient evidence, reflects the reasonable and necessary attorney's fees that can be shifted to the non-prevailing party." *Id*. at 499. "[O]ther considerations may justify an enhancement or reduction to the base lodestar; accordingly, the fact finder must then determine whether evidence of those considerations overcomes the presumption and necessitates an adjustment to reach a reasonable fee." *Id*. at 501.

27

We note that Bay's testimony concerning attorney's fees spans ten pages of the reporter's record. Bay's testimony is further supported by exhibits containing detailed time and billing records which itemize the legal work that was performed, the time spent on each task, and the applicable hourly rate. *See id*. at 502 ("[B]illing records are strongly encouraged to prove the reasonableness and necessity of requested fees when those elements are contested."). Shumate presents no argument applying the applicable principles to Bay's evidence. Shumate's conclusory statement that Bay's evidence is somehow deficient, without more, presents nothing for our review. *See* TEX. R. APP. P. 38.1(i); *Republic Underwriters Ins. Co. v. Mex-Tex, Inc*., 150 S.W.3d 423, 427 (Tex. 2004); *Amrhein v. Bollinger*, 593 S.W.3d 398, 402 (Tex. App.—Dallas 2019, no pet.).

Finally, Shumate argues that Bay presented insufficient evidence to support the award of contingent appellate fees. An award of contingent appellate attorney's fees is an award of fees that a party is not entitled to recover until an appeal is resolved in that party's favor. *Sky View*, 555 S.W.3d at 116. Because such an award depends on the outcome of the appeal and is not a final award, the full evidentiary requirements of *Rohrmoos* are not implicated. *Yowell v. Granite Operating Co*., 620 S.W.3d 335, 355 (Tex. 2020). Nevertheless, a party seeking conditional appellate attorney's fees must offer "opinion testimony about the services it reasonably believes will be necessary to defend the appeal and a reasonable hourly rate for those services." *Id*. We have reviewed the record and conclude that Bay's uncontroverted evidence meets this standard. *See id*.

We overrule Shumate's fifth issue.

### VII. CONCLUSION

28

We affirm the trial court's judgment.

LETICIA HINOJOSA
Justice

Delivered and filed on the
15th day of July, 2021.